CYRENIUS M. GREENE, Respondent, *v.* CHESTER S. BATES, Impleaded, etc., Appellant.

H. held a promissory note made by McI., for the accommodation of F., the payee and first indorser. The note being past due, and H. pressing for payment, plaintiff, at the request of McI., and in consideration of the assignment to him of a bond and mortgage which had been given to McI. by F. as security, agreed with H. to purchase the note, and to secure the purchase by his own note, payable January 1, 1871; the note of McI., and the bond, mortgage and assignment to remain in the hands of the attorney of McI. until the maturity of plaintiff's note; if that note was paid, then the papers so deposited to be delivered to plaintiff; if not paid, the note to be returned to H., and the bond and mortgage to McI. Plaintiff gave his note, and the papers specified were deposited under the agreement. H. procured plaintiff's note to be discounted before maturity. It was paid by plaintiff at maturity, and the papers deposited were delivered to him. In an action upon the note made by McI., *held,* that the effect of said agreement was to extend the time of payment and suspend the right of action thereon until the maturity of the note given by plaintiff, and that thereby defendant B., a subsequent indorser, was discharged.

(Argued June 7, 1878; decided September 17, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of plaintiff, entered upon the report of a referee.

This action was upon a promissory note made by defendant McIntosh, payable to the order of and indorsed by defendant Fischer, and thereafter indorsed by defendant Bates. Defendant Bates answered, setting up, among other things, that by a valid agreement between H. and a former holder

of the note, plaintiff and McIntosh, the time of payment of the note was extended, and the right of àction thereon suspended, whereby he was discharged. ·

The facts appear sufficiently in the opinion.

*E. Countryman*, for appellants. If the time of payment was extended until maturity of the new note, the indorser was discharged. (*Myers* v. *Wiley*, 5 Hill, 463; *Fellows* v. *Prentiss*, 3 Den., 512; *Bangs* v. *Mosher*, 23 Barb., 478; *Hart* v. *Henderson*, 6 Duer, 294;. *Elwood* v. *Diefendorf*, 5 Barb., 398 ; 11 Wend., 312; 14 Barb., 232 ; *Dorlon* v. *Christie*, 39 id., 610; *Place* v. *McIlvain*, 38 N. Y., 96.) Plaintiff was bound to exercise as much care as a prudent owner would have done. (Willis on Trustees, 125, 169, 172; Lewin on Trustees, 299; 2 Kent's Com. [6th ed.], 230, note *a.*) McIntosh being only an accommodation maker of the note was surety only, and plaintiff knowing this, upon the failure of the principal to pay, should have notified the surety. (*Foot* v. *Foot*, 58 Barb., 258; *Hayes* v. *Ward*, 4 J. Ch., 123; Story's Eq. Jur., 501; *Herrick* v. *Borst*, 4 Hill, 630; 3 Sand., 545; 45 N. Y., 107.)

*Ward Hunt, jr.*, for respondent. The agreement of Nov. 7, 1870, between plaintiff and Hurd did not operate to create an extension of time for payment of the note or suspend the right of action thereon, and thus release the indorser. (*Reynolds* v. *Ward*, 5 Wend., 501 ; *Bank of Utica* v. *Ives*, 17 id., 501; *Gahn* v. *Niemcewicz*, 11 id., 312; *Pabodie* v. *King*, 12 J. R., 426; *Halliday* v. *Hart*, 30 N. Y., 474; *Parmelee* v. *Thomson*, 45 id., 58; *Second Nat. Bk. of Oswego* v. *Poncher*, 56 id., 348; *Cary* v. *White*, 52 id., 138; *Gibson* v. *Reeve*, 19 Wend., 389 ; Story on Promissory Notes, § 416; *Clark* v. *Sickler*, Ct. of App., 1876; Weekly Digest, vol. 2, No. 10, p. 232.)

RAPALLO, J. The important question in this case is whether the legal effect of the arrangement made between

Hurd while holder of the note in suit, Greene the plaintiff, and McIntosh the maker, was to suspend the right of action of Hurd ·against McIntosh until the maturity of the note given by Greene to Hurd. If such was its effect it doubtless discharged Bates the last indorser, he not having consented to the arrangement.

The substance of the arrangement was that on the 7th of November, 1870, the note being past due and Hurd the holder pressing for payment, Greene the plaintiff, at the request of McIntosh the maker, and in consideration of the assignment of a bond and mortgage hereafter mentioned, agreed with. Hurd to purchase the note from him, and to secure the purchase-money by his, (Greene's) note payable January 1, 1871. The note in suit was not to be delivered to Greene until he should have paid his note to Hurd, but ·was to remain until the maturity of that note in the hands of Mr. Shoecraft, the attorney of McIntosh. McIntosh, to secure Greene in making the purchase, agreed to assign to him a bond and mortgage which had been given to McIntosh by Fischer, the payee and first indorser of the note in suit, for whose accommodation the note had been made by McIntosh. This bond and mortgage and assignment were also to be deposited with Shoecraft to remain until the maturity of the note given by Greene to Hurd. If that note was paid at maturity the note in suit, and the bond and mortgage and assignment, were to be delivered to Greene. ·Otherwise the note in suit was to be returned to Hurd and the bond and mortgage to McIntosh. Fischer, to further the arrangement paid the costs of a foreclosure of the mortgage which had been commenced by McIntosh and was then pending and the foreclosure was abandoned.

This arrangement was carried out; the note in suit and bond, mortgage and assignment to Greene were deposited with Shoecraft, and Greene delivered his note payable January 1, 1871, to Hurd, who before it became due procured it to be discounted at bank and used the proceeds. It was duly paid at maturity and the note in suit and the bond and

mortgage were delivered to Greene, the plaintiff in this action.

The referee has found that Greene made no agreement to extend the time of payment of the note in suit when it should come to his hands, but he has not found whether or not Hurd agreed to suspend proceedings thereon until the maturity of Greene's note and default thereon, and the question now to be considered is whether the effect of the arrangement was not to suspend his right of action during that interval.

It seems quite clear that as between Hurd and Greene it would have been a violation of the spirit of the arrangement if, after having made a conditional sale of the note in suit to Greene and received his negotiable note for the price and discounted and put it in circulation and used the proceeds, he had collected the amount of the note sold, and left Greene to pay his note to the bank where it had been discounted. It must have been for the purpose of guarding against such a course that the note was required to be deposited with Shoecraft. It is also clear that Greene had no right to collect the note until he should have paid his own. As between Hurd and Greene therefore it must be, that the understanding was that the note was to remain on deposit with Shoecraft, and that neither party was to collect it, before the maturity of Greene's note, the payment or non-payment of which was to determine whether the note in suit should belong to Hurd or to Greene.

If the transaction had been solely between Hurd and Greene it might be argued that an agreement between them would not have been available to either McIntosh the maker or Fischer the first indorser, as a defense, had Hurd undertaken in violation of such agreement to proceed for the collection of the note. But the arrangement was not solely between Hurd and Greene. Fischer and McIntosh were both parties to it and present when it was made. It is found by the referee in his supplemental findings, that the agreement was made at the request of McIntosh and that he furnished a part of the consideration, by assigning his bond and mort-

gage to Greene. He also abandoned his pending foreclosure· The arrangement will not bear the construction that McIntosh was to have no benefit from it and be liable to be sued immediately. Fischer, the mortgagor and first indorser of the note, and the party ultimately bound to pay it, also was a party and aided the consummation of the arrangement by paying the costs of the foreclosure, which he would scarcely have done if there was to be no delay. It was clearly a mutual arrangement between all these parties by which the pressure of Hurd was to be removed; he was to get his pay from Greene, and the receipt and negotiation of Greene's note payable at a future day clearly bound him to suspend proceedings until the maturity of that note. It is argued that there was no consideration for such suspension. The facts furnish a very complete answer to this argument. The additional security of Greene's note was an ample consideration, and the term of suspension was until the maturity of that note, when, if default was made, he could reclaim the note in suit and the arrangement would come to an end, otherwise the right of action thereon would vest in Greene.

In this arrangement the rights of Bates the appellant do not appear to have been at all considered. He was not consulted and no measures were taken to preserve his liability as indorser. Had he taken up the note as indorser he would have succeeded to the rights of Hurd the holder and been bound by the arrangement made by him. Under these circumstances he was discharged.

The judgment should be reversed and a new trial ordered, costs to abide the event.

All concur, except MILLER and EARL, JJ., absent.

Judgment reversed.