## BROWN et al. v. MASON et al.

(Supreme Court, Appellate Division, Fourth Department. November 20, 1900.)

1. PRINCIPAL AND SURETY—MORTGAGE.

Defendant and wife executed a mortgage accompanied by a bond, payment of which was guarantied by both. The mortgage was given as collateral security for an account for work done on property belonging to the wife, in which the husband had no interest, and for which he was not liable. *Held*, that the husband was surety for his wife.

2. SAME—DISCHARGE OF SURETY.

Defendants, who were husband and wife, executed a mortgage to secure payment of an account for which the wife alone was liable, and guarantied payment of the bond accompanying the mortgage. The wife entered into co-partnership with a third party, who agreed to pay two-thirds of the claim secured, and did pay to the mortgagees a part of the account in cash and the balance in joint notes of the partners. The husband knew nothing of the giving of such notes. *Held*, that the acceptance of the notes extended the time of payment of the bond and mortgage, and released the husband from liability.

3. GUARANTY—BONDS—MORTGAGES—PAYMENT—RELEASE.

Defendants, who were husband and wife, executed a mortgage to secure a debt owing by the wife, and guarantied payment of the bond accompanying the mortgage. The wife entered into a co-partnership with a third party, who agreed to pay two-thirds of the secured debt, and did pay a part in cash and the balance in joint notes of the firm, which were accepted in payment of the mortgage. The mortgagors delivered the bond and mortgage to a bank as collateral security, but without an assignment, and without transferring the original indebtedness. One of the notes was held by the bank for collection, and, when paid, was indorsed as a payment on the bond. Afterwards, and after the firm had failed, the father of the partner, who had advanced money to his son, procured an assignment of the bond and mortgage to him, but none of the canceled notes were turned over to him. *Held*, that the wife was not liable, since the guaranty was extinguished by payment of the bond and mortgage, which also deprived her partner of any authority to revive and transfer it.

McLennan, J., dissenting.

Appeal from judgment on report of referee.

Action by Perry E. Brown and another, as executors of the will of Andrew Brown, deceased, against Melchert D. Mason and another. From a judgment in favor of defendants, plaintiffs appeal. Affirmed.

This action was commenced September 10, 1895, to foreclose a mortgage executed by the defendant Melchert D. Mason to John C. Conway and Jonas Woodhead, comprising the firm of Conway & Woodhead, and bearing date January 17, 1894, but acknowledged the 30th day of that month. Accompanying the mortgage was the bond of the mortgagor, and the payment of the same was guarantied by himself and his wife, Fannie A. Mason. The mortgage purports to have been given to secure the payment of $283.38, to be paid on or before September 1, 1894. The said bond and mortgage were assigned to Andrew Brown by written assignment dated August 5, 1895, and the assignors guarantied there was undue and unpaid thereon the sum of $283.38 and interest from the date of the mortgage. This action was commenced by Andrew Brown, who died before the trial, and his executors were substituted as plaintiffs. The complaint asks for judgment for deficiency against both defendants.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

A. C. Pickard, for appellant.
V. E. Peckham, for respondent Fannie A. Mason.
N. H. Hill, for respondent Melchert D. Mason.

SPRING, J.   At the time of the giving of the bond and mortgage, Fannie A. Mason owed Conway & Woodhead on account for plumbing done in a hotel owned by her.   Her husband had no interest in the hotel property, and was not in any way liable for the account mentioned.   The evidence without contradiction shows that the bond and mortgage were given as collateral security for this account. Melchert D. Mason was, therefore, surety for his wife; and the mortgagees, knowing of this relation, were bound to give heed to it. Grow v. Garlock, 97 N. Y. 81.   The exact amount of the debt for which the bond and mortgage were to stand as security does not appear.   April 30, 1895, Mrs. Mason and Perry E. Brown, now one of the plaintiffs, entered into co-partnership concerning the hotel property by written articles, and the said Brown was to pay two-thirds of certain claims outstanding against her, enumerated in their agreement, including that of Conway & Woodhead, and which was stated to be $275.   On the 10th day of May, 1895, Perry E. Brown paid $30 in cash to apply on said indebtedness, and at the same time delivered to Conway & Woodhead the joint promissory note of Mason & Brown for $150, due in five days from its date, and a note of like form by said firm for $70, due in three months thereafter.   Conway & Woodhead had delivered the bond and mortgage in suit to the Jamestown National Bank as collateral security for a general indebtedness held by the bank against them.   No written assignment was made, but it was put by the bank in an envelope in which its collateral securities were kept, and which contained a printed indorsement stating the character of such securities.   The original claim against Fannie Mason was never transferred to the bank.   The $70 note was discounted at the bank by Conway & Woodhead, and its avails went into their general account there.   The $150 note was delivered to the bank for collection, and upon its payment at maturity the vice president indorsed the sum paid as a payment on the bond.   The note was stamped "Paid," and delivered up by the bank. As already stated, the precise amount of the account of Conway & Woodhead against Mrs. Mason is not shown.   It is patent, however, that the $250 were received by them as the full measure of the indebtedness.   Otis Conway testified the bond and mortgage were fully paid, and there is no suggestion that anything additional was exacted by this firm when the assignment was made to Andrew Brown. The bond and mortgage were held by attorneys for collection, and a suit was imminent, and these notes and the cash payment were all made on the same day, and with the purpose, obviously, of meeting the full amount of the claim, and to prevent foreclosure.   The acceptance, therefore, of these notes, even if the bond and mortgage were kept alive, must have operated to extend the time of payment, and thus relieve the surety, Melchert D. Mason, who knew nothing of the transaction.   Shipman v. Kelley, 9 App. Div. 316, 41 N. Y. Supp. 328; Hubbard v. Gurney, 64 N. Y. 457; Martens-Turner Co.

v. Mackintosh, 17 App. Div. 419, 45 N. Y. Supp. 275; Reed & Barton v. Ashe, 18 App. Div. 501, 504, 505, 46 N. Y. Supp. 126; Antisdel v. Williamson, 37 App. Div. 167, 55 N. Y. Supp. 1028; Brandt, Sur. (2d Ed.) § 363. The giving of the notes, especially with the additional security of the firm of Mason & Brown, constituted a good consideration for this extension. Greene v. Bates, 74 N. Y. 333–337.

It is contended by the appellant's counsel that the bank held no enforceable title to the bond and mortgage. The note of $70 was discounted at the bank, so that during the period of its life it could not have been surrendered by the mortgagees in case a foreclosure was sought, and this must accordingly have been operative as a payment pro tanto. Fitch v. McDowell, 145 N. Y. 498, 40 N. E. 205. It seems clear, therefore, that there was a suspension of the time of payment of the bond and mortgage in any event which would cancel these collateral securities and discharge the surety.

The only liability set forth in the complaint against the defendant Fannie A. Mason arises from her guaranty upon the bond. If the bond and mortgage fail, the dependent guaranty must also become ineffective. Whatever claim may be subsisting by reason of the original indebtedness, it cannot be infused into this cause of action, for no transfer of it was ever made to Andrew Brown. The referee has found that these notes were accepted, with the $30, in payment of the bond and mortgage; and, while a contrary finding might have been justified, the facts and inferences are ample to support the conclusion reached by the referee. Otis Conway, son of one of the firm, testified at the outset that the bond and mortgage were paid. He further testified that Perry Brown told him before the notes were given that the mortgage was to be assigned to Andrew Brown, but that is the ipse dixit of Perry, as Conway apparently knew nothing personally of any arrangement with the father. Perry Brown testified that the $70 note was not taken in payment, but for the assignment of the mortgage. This is in conflict with his testimony subsequently given, and unmistakably the money to pay that note was furnished by the debtors, Mason & Brown, and Andrew Brown had nothing to do with that transaction. Again, he testified that only $180 were paid on the bond and mortgage, which sum was made up of the note for $150 and the cash payment. He said that he "gave a short note, and went home, and father let me have the money"; that it was a loan from the father to him. He does not state when that arrangement was made with his father. He kept the books of the firm of Mason & Brown, and charged thereon as "cash paid" the entire $250 in the separate sums represented by the notes and the cash item. His wife's version is that when he obtained the $150 between the first and the middle of May he promised to assign the mortgage to his father; and Mary, the widow of Andrew, confirms this statement. The money was not obtained until after the $150 note was given, and the referee might well have concluded that when that was delivered to Conway & Woodhead it was expected the bond and mortgage would be absolutely extinguished. There are other items of testimony which tend to show that the assignment to Andrew Brown was an afterthought, and

made in bad faith, as the referee states in his opinion. The assignment was not made until August 5, 1895, and on the same day that the $70 note was paid. If the agreement was that the assignment was to be based upon the loan of $150, we would expect it to follow the loan closely, rather than to await the determination of the other transaction, with which it had no connection. The vice president of the bank indorsed the payment of the $150 on the bond when the note was paid, and by the direction of some one, but he is unable to identify the man. Perry Brown paid the note, and must have known of this indorsement. The note was canceled, and was not turned over to the father. In view of the fact that no explanation of the erasure of the indorsement was proffered, we may well conclude that when the assignment was made it was deemed judicious to get rid of this evidence of a payment. At this time Mason & Brown must have been hard pressed financially, as within a month a receiver was in possession of the firm's property. The father had loaned his son, and out of the wreck he might save something if the bond and mortgage could be resuscitated. The assignment was, therefore, delivered, and in it Conway & Woodhead covenanted there was unpaid on the bond and mortgage the full amount secured thereby. Brown had furnished only $150, and the other payments were confessedly by Mason & Brown, and this covenant is significant in characterization of the transaction. The son was to pay two-thirds of this demand, and the suggestion occurs that the father loaned to him the $150, not with any expectation of holding a liability against the firm, or particularly of acquiring the bond and mortgage, but to aid his son in the venture in which he had just embarked. There was no assignment of the debt against Fannie Mason, and, if not paid, that still remains an existing indebtedness in favor of Conway & Woodhead. If the bond and mortgage had been paid, and that was done in accordance with the understanding of the parties, the son had no authority to revive them, and to cause them to be transferred to the father. They were given for a specific purpose, and when the debt was paid the son could not bind his co-partner to an agreement to transfer securities canceled by the payment of the original demand. He had no interest in those securities, and Fannie Mason was a mere guarantor upon an instrument which had been paid, and its extinguishment carried with it her contract of guaranty. She might be liable upon the note of $150, or upon the original claim, but not otherwise. Whatever destroyed the bond and mortgage, whether it was by payment or release of the mortgagor by suspending the time of payment, also nullified the guaranty, which depended for its life upon the continued validity of the bond and mortgage. If Conway & Woodhead accepted these obligations in payment, their authority over the collateral securities ended, and they could not pass them by transfer to Andrew Brown at the dictation of his son, who never possessed any interest in them. The referee had the witnesses before him, and arrived at his conclusions from the testimony and from inferences properly deducible therefrom, and which he could measure up more satisfactorily than an appellate court with only the record before it; and we do not

feel called upon to interfere with the findings of fact which he has made.

The judgment is affirmed, with one bill of costs to the respondents. All concur, except McLENNAN, J., who dissents in opinion.

McLENNAN, J. (dissenting). I am of the opinion that the evidence clearly establishes that at the time the note for $150 was given by Mason & Brown to Conway & Woodhead, Conway & Woodhead were the owners of the mortgage in suit, and that it was understood by them that the money with which to pay said note was to be obtained by Mason & Brown from plaintiffs' testator, and it was agreed by Conway & Woodhead that upon payment of such note to them they would assign the mortgage to plaintiffs' testator; that the money to pay the note was obtained from plaintiffs' testator by Mason & Brown upon the express agreement with him that the mortgage would be assigned to him by Conway & Woodhead as security for the payment of the money so loaned; that under such circumstances the fact that Conway & Woodhead, the owners of the mortgage, in violation of their agreement, regarded and treated the notes as payment of the mortgage, did not inure to the benefit of the defendant Michael D. Mason, the mortgagor, and operate as a cancellation of the mortgage, or in any manner affect the rights of the plaintiffs; and that, therefore, the plaintiffs are entitled to maintain this action, and to foreclose the mortgage in suit for $150, the amount of money so loaned by plaintiffs' intestate.