(75 App. Div. 393.)

GERMAN-AMERICAN BANK OF TONAWANDA v. SCHWINGER.

(Supreme Court, Appellate Division, Fourth Department. September 30, 1902.)

1. TRIAL—DIRECTION OF VERDICT—APPEAL.

Where both plaintiff and defendant move for the direction of a verdict, such action clothes the trial court with the functions of a jury, and all controverted and inferable facts are not reviewable.

2. BANKS—CASHIER—SURRENDERING BOND—AUTHORITY.

In an action against the surety on a bond given to a bank to indemnify it against all discount, etc., of the paper of a certain corporation, the defense was that the bond had been surrendered and canceled, and another one taken, and plaintiff denied the authority of the cashier to surrender the bond. A by-law of the bank gave the cashier general charge of the books, papers, and property, subject to the direction of the officers. The plaintiff's president testified that the cashier generally determined the rate of discount, etc., and looked after the securities, and a director testified that the cashier had general charge of the lending of money. *Held*, that the cashier had authority to cancel the bond.

3. SAME—RATIFICATION.

In an action against the surety on a bond given to a bank to indemnify it against all discount, etc., of the paper of a certain corporation, the defense was that the bond had been surrendered, and another one, in a larger sum, taken, and plaintiff denied the authority of the cashier to surrender the bond. The president and a co-director testified that they did not know that a new bond had been accepted as a substitute for the old one, but it appeared that all the bank officials knew that the corporation's discounts were in excess of the amount secured by the first bond, and the bank, in endeavoring to recover for the discounts, sued on the second bond first. *Held*, that the cashier's action had been ratified.

4. SAME—CONSIDERATION.

In an action by a bank on a bond given to it to indemnify it against loss on discounts for a certain corporation, the defense was that the bond had been surrendered, and another one, in a larger sum, taken, owing to impairment of the corporation's credit, but plaintiff contended that there was no consideration for the surrender. It appeared that defendant had signed the second bond on an understanding that the bank cashier would also do so, but the cashier failed so to do, and the bond was in fact of no value. *Held*, that the surrender by defendant of his right to insist that the corporation make a settlement with the bank under the first bond was a sufficient consideration for the surrender thereof.

Action by the German-American Bank of Tonawanda, N. Y., against Christoff Schwinger. Motion for a new trial on exceptions after judgment for defendant. Ordered heard in appellate division in the first instance. Motion denied.

This action, which was commenced on the 9th day of January, 1901, was brought to recover the sum of $10,000 on a bond for that amount executed by the defendant and others on the 31st day of January, 1895, and delivered to the plaintiff as a continuing security for the payment, at their maturity, of all promissory notes and bills of exchange made, drawn, and indorsed or accepted, or which should thereafter be made, drawn, indorsed, or accepted, by the Busch Brewing Company, of Tonawanda, N. Y., and held or discounted by the plaintiff in an amount not exceeding the sum specified in the bond. At the time this bond was executed, the plaintiff held seven notes, which it had theretofore discounted, for the brewing company, at its request, and

---

¶ 1. See Appeal and Error, vol. 3, Cent. Dig. § 4024.

for its benefit. These notes had been renewed from time to time as they fell due, and, after deducting some partial payments made thereon, they amounted, in the aggregate, at the time this action was brought, to about $9,100, exclusive of interest. The defendant, while admitting in his answer certain formal allegations of the complaint, denied that the plaintiff is the owner and holder of the bond in suit, and alleged that the same was delivered up and canceled by the plaintiff on or about the 24th day of February, 1896, at which time a new bond, in the sum of $15,000, executed by the defendant and certain other persons, was delivered to the plaintiff in exchange for the one upon which this action is brought. The issues raised by the pleadings came on for trial at a trial term held in Erie county on the 30th day of October, 1901, and at the close of the evidence a motion for the direction of a verdict was made by each party, without any request by either to go to the jury. The court thereupon directed a verdict in favor of the defendant, and ordered exceptions to be heard by this court in the first instance.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Richard Crowley, for plaintiff.

Nathaniel W. Norton, for defendant.

ADAMS, P. J. The effect of the request made by both parties for the direction of a verdict was to clothe the trial court with the functions of a jury, and, as a consequence, all controverted and inferable facts must, for the purposes of this review, be deemed established in favor of the defendant. Thompson v. Simpson, 128 N. Y. 270, 28 N. E. 627; Westervelt v. Phelps, 171 N. Y. 212, 63 N. E. 962. It so happens, however, that in this particular case there is but little controversy respecting its leading facts, which, so far as essential to the disposition of the legal questions involved, may be thus stated: Edward G. Riesterer, one of the obligors on the bond in suit, was also cashier of the plaintiff from the time of its incorporation down to January 1, 1897. He was also a stockholder and director of the Busch Brewing Company. Some time in the forepart of the year 1896, he informed the directors of the brewing company that their line of discounts was in excess of the amount secured by their bond, and that it was the wish of the bank officials that a new bond should be given, as security for $15,000 of paper, instead of $10,000, as provided in the existing bond. A new bond was thereupon prepared, and the same was subsequently signed by all the parties to the original bond, except three, one of whom was Riesterer himself, who promised to sign it, but failed to do so. The $15,000 bond bore date February 14, 1896, and when executed was delivered to Riesterer by a clerk of the brewing company. Riesterer took the bond, and placed it in the bank vaults, and thereupon delivered the original bond to the brewing company's clerk, having first made the following indorsement thereon, viz.:

"February 24, 1896. We do hereby release the above named from any and all liabilities on the foregoing bond, in consideration of a new bond, dated February 14, 1896, signed by Jacob Busch, Fred Busch, Frederick A. Busch, August J. Simon, O. Schwinger, and D. Grieser, which was this day delivered to this bank                                 E. G. Riesterer, Cashier."

The bank thereupon continued to discount paper for the brewing company until November, 1898, when it brought an action upon the second bond to enforce payment of such of the paper as it was supposed to secure, and which had then matured and was unpaid. That action was defended by the several sureties to the bond, and this defendant, in his verified separate answer, alleged that he was induced to execute the bond upon the express condition that Riesterer should unite in its execution as a co-obligor; that it was well understood that the bond should not be delivered to the bank, nor become operative and binding upon the obligors therein named, until executed by Riesterer; that Riesterer did not join in its execution; that the bank had knowledge of the conditions upon which the bond was executed, and took the same with such knowledge. Upon the issues thus raised, a trial was had, which resulted in a dismissal of the plaintiff's complaint; whereupon the present action was brought, with the result already stated.

For the purpose of this review, and in support of the plaintiff's motion for a new trial, the following propositions are submitted for our consideration, viz.:

"(1) That Edward G. Riesterer had no power or authority to accept the $15,000 bond in the place of the $10,000 bond, and cancel and surrender the same, and release the obligors thereon from liability, and his act in assuming to do so was and is null and void. (2) That the assumed cancellation, release, and surrender was not executed in conformity with the state banking law, and was and is a nullity. (3) That the assumed cancellation, release, and surrender was without consideration, and is void. (4) That the act of Riesterer, and notice to him, and knowledge on his part of the conditional agreement, was not notice to the bank, or knowledge on the part of the bank. (5) That the judge erred in the admission and exclusion of evidence on the trial."

In discussing these several questions, we think it will be found that with the exception of the last one they are all more or less involved in and dependent upon the first; and, as regards the fifth, it is only necessary to say that having examined the various exceptions to the admission and rejection of evidence, we find none which presents error so prejudicial as to render a new trial necessary.

We pass, therefore, to the crucial question in the case, and that is, has the defendant been legally released from all liability upon the bond in suit; or, in other words, was the written release, drawn and signed by the plaintiff's cashier, binding upon the plaintiff by reason of authority conferred upon Riesterer to execute the same, or by a subsequent ratification of his act? Generally speaking, the cashier of a bank is its chief executive officer, through whom and by whom the operations of the bank in paying or receiving moneys, or in discharging or transferring securities, are usually conducted. Ang. & A. Corp. (4th Ed.) §§ 299, 300. His relations to the bank, whose officer he is, are virtually the same as those of an agent to his principal, and, if he acts within the scope of his authority, the bank is responsible for such acts, as is also the case if it affirms, or, with knowledge, omits to disaffirm, acts which are unauthorized. Bank v. Burt, 93 N. Y. 233; Story, Ag. (4th Ed.) § 114. The full measure of a cashier's au-

thority is frequently defined by the by-laws of the bank, and in this instance we find that by one of the plaintiff's by-laws, which had been adopted and was in force at the time when it is claimed the bond in question was canceled and surrendered, it was declared that:

"The cashier shall have the general charge of the books, papers, and property of this association, subject to the control of the officers, and shall, in the transaction of all business, be subject to their direction. He shall also be ex officio secretary of the board of directors, countersign all stock certificates, keep its minutes."

It is to be observed, however, that this definition of Riesterer's duties and powers is somewhat general in its terms, and for that reason it will probably furnish but little aid in our attempt to determine their real scope. This may, perhaps, be more satisfactorily ascertained by inquiring what duties were imposed upon him by the bank, and what authority, in respect of its business operations, he was permitted by custom or express direction to exercise. The plaintiff's president was one Martin Riesterer, the father of the cashier. He was called as a witness for the plaintiff, and upon his cross-examination testified that, while he had general supervision over the affairs of the bank, his son usually determined the rates of discounts; that he looked after the securities, and, when securities were given for notes discounted, he had authority to deliver them up when the notes were paid; that the business was done in this way, and that if a customer had furnished security for his paper, and more security was wanted, "Edward had charge of that, and asked for the greater security." Another witness, by the name of Oelkers, who in 1896 was one of the plaintiff's directors and a member of its discount committee, and in 1897 its cashier, testified that when Riesterer was cashier, "the taking of paper, discounting paper, lending money by the bank, * * * was done by the cashier"; and that the discount committee rarely troubled itself with such matters. So it appears that the duties of the cashier of this bank were practically the same as those of any other bank, and they apparently embraced the terms, conditions, and all other details pertaining to the loaning of money. If a customer applied for a discount, the cashier granted or refused such application, subject, in some instances, no doubt, to the approval of the discount committee; and when bank paper was paid, he was empowered, as we have seen, to cancel the same, and deliver up any security therefor which the bank might happen to have in its possession. In fine, he was the bank's chief executive officer, and, as such, he doubtless possessed greater power and authority than any other official connected with the bank. Such being the case, we do not see why, upon the evidence to which we have adverted, the learned trial justice was not warranted in finding that in delivering up and canceling the $10,000 bond Edward G. Riesterer was acting within the scope of his authority. But, conceding for the moment that we are wrong in this conclusion, and that the cashier acted outside of the scope of his authority, we think it quite plain that the plaintiff, with knowledge of his alleged unauthorized acts, ratified and confirmed the same. It is true that the president and one of his co-directors testified that they did not know that the new

bond had been accepted by the cashier as a substitute for the old one; but they did know, as did all the other bank officials who were sworn in the case, that the brewing company's discounts were in excess of the amount secured by the first bond, and that a new bond in the sum of $15,000 had been accepted by, and was in the possession of, the bank. Indeed, Oelkers, the cashier who succeeded Edward G. Riesterer, testified that when he discounted paper for the brewing company he did not rely upon the first bond for security, and that on one occasion "they" got the bond out of the safe, and went over the names that were on it, and that upon another occasion he took it out, and showed it to the defendant. Moreover, when in due course of time the bank sought to enforce the payment of the brewing company's paper held by it, it resorted to the second bond, instead of the first, and its verified complaint in that action alleged that the $15,000 bond was received and accepted by the bank at or about the time it bears date. With all these facts before it, how was it possible for the trial court to reach any other conclusion than that a perfect and unqualified ratification had been established?

We are not unmindful of the situation in which the decision of the trial court leaves the parties. Apparently the defendant escapes all liability upon either bond, and the plaintiff is deprived of its security so far as the defendant is concerned. This result, while it is to be deplored, is one which is clearly attributable to the fraudulent acts of the plaintiff's agent, for which the defendant is in no sense responsible; and, inasmuch as the plaintiff has invoked a remedy which is purely legal in its nature, we cannot see why the defendant should not be allowed to rest upon his strict legal rights.

In this connection it will be proper to refer briefly to the plaintiff's claim that the release and cancellation of the first bond were without consideration. This contention would undoubtedly possess much force if the only consideration to be regarded was the second bond, which, as it turned out, was of no real value whatever. But the circumstances under which that bond was given must likewise be borne in mind. The defendant Schwinger was under no obligation to sign it, and refused absolutely to do so unless it was also signed by Edward G. Riesterer, who had promised to sign it. At first he declined to attach his name to it until Riesterer had done so, but upon the assurance that Riesterer would sign it, he did attach his signature, and then sent word to Riesterer that he wished his name taken off unless he (Riesterer) joined in its execution. When the bond was delivered to Riesterer at the latter's office in the bank, he was informed of what Schwinger had said, to which he replied, "That's all right," and Schwinger thereupon inferred, as he had the right to do, that his directions would be complied with. In this manner he was induced to assume an attitude which amounted virtually to a consent that the brewing company's line of discounts might be increased, and the payment thereof deferred indefinitely. It is fair to assume that, had he known that Riesterer intentionally omitted to sign the new bond, he would have taken his name off, in which event he would have been in a position to insist that the brewing company, whose credit was becom-

ing somewhat impaired, should be compelled to make some sort of a settlement with the bank. The surrender of this privilege, and the loss of opportunity to assert it, by reason of the fraud and deceit practiced by the plaintiff's agent, it seems to us furnished adequate consideration for the cancellation of the original bond.

In our consideration of the case thus far we have followed the reasoning of the learned trial justice, as indicated in his elaborate decision, which resulted in the direction of the verdict for the defendant; but there is another aspect in which the case may be considered, and it is one which is pressed upon our attention by the defendant's counsel with much emphasis. His contention, as we understand it, is that the bank, being chargeable with knowledge of the conditional agreement under which its cashier received the substituted bond, and of the fraud by which the defendant's execution was induced, is responsible for the act of its cashier in subsequently discounting and renewing notes without the consent of the defendant, and in derogation of his rights. That there is much force in this contention we think must be conceded, for it stands uncontradicted that but for Edward G. Riesterer's fraud the defendant would not have joined in the execution of the new bond, and it has been adjudicated that for that, or some other reason, it possessed no validity as to him; and yet the plaintiff's cashier who succeeded Riesterer testified that it was upon the faith of this substituted security, which was quite different in its conditions, parties, and extent of indemnity from the original one, that he discounted the brewing company paper which the plaintiff is seeking to collect in this action. In these circumstances, it is by no means certain that, within the rule that a surety is entitled to a strict construction of the bond under which it is sought to make him liable, the defendant was not released, by operation of law, from all liability incurred by him upon the original bond, even if the same had not been surrendered and canceled. Insurance Co. v. Lowenberg, 120 N. Y. 44, 23 N. E. 978; Powers v. Silberstein, 108 N. Y. 169, 15 N. E. 185; Brown v. Mason, 55 App. Div. 395, 66 N. Y. Supp. 917; Antisdel v. Williamson, 37 App. Div. 167, 55 N. Y. Supp. 1028; Reed & Barton v. Ashe, 18 App. Div. 501, 46 N. Y. Supp. 126; Shipman v. Kelley, 9 App. Div. 316, 41 N. Y. Supp. 328. But whether our decision is made to rest upon this ground or the one first considered, or upon both, we must hold that a proper disposition of the case was made at the trial term.

Motion denied, exceptions overruled, and judgment ordered for the defendant upon the verdict, with costs, upon the opinion of ADAMS, P. J. All concur, except ADAMS, P. J., not voting.