EXECUTORS AND ADMINSTRATORS—CLAIMS AGAINST ESTATE—EVIDENCE.

> A wandering peddler, for services rendered to him, executed a writing promising payment to claimant of $5,000 after his death from his estate "for all my trouble and all her kindness" to him.  He had stayed at claimant's house for several days .at a time, five or six times a year, without making any payment therefor.  He called the instrument a "Unique Charity."  *Held* to show that decedent knew that the compensation was beyond the value of the services rendered, but that the claim under the instrument was valid and enforceable against his estate.

In the matter of the estate of George W. Todd, deceased.  Claim presented against the estate upon the following instrument, contained in a patent medicine almanac:

"Onondaga Hill, Sept. 16, 1899.

"Unique Charity.

"I promise Maggie Mattice five thousand dollars when I die for all my trouble and all her kindness to me.  I also killed her canary bird to-day for which she must have her pay for this account must be payed after my death from my estate.

"George W. Todd, Peddler, the Man Behind the Wheelbarrow."

The testimony presented upon the hearing showed that the maker of the note for several years had stopped at the house of claimant and her husband for several days at a time, five or six times a year, and that no charge had ever been made for his entertainment and care.  At the close of the testimony offered in behalf of the claimant, counsel for the administrator moved to dismiss the claim upon the ground that the paper in evidence was not a promissory note; that it did not acknowledge an indebtedness, and was without consideration; that it appeared upon the face of the paper that it was an engagement to give only, and did not contain a promise or obligation to pay the money to the claimant; that it appeared upon its face that it was an act of charity, and that the paper was not properly executed in accordance with the statutes of the state; that the paper was a nudum pactum; that it was an executory contract, given without consideration.  Judgment for claimant.

C. D. Kiehel, for administrator.

J. R. Collins (H. F. Remington, of counsel), for claimant.

BENTON, S.  I understand there was no relationship between these parties; hence all services import a promise to pay.  The evidence shows services were rendered, and services which a man in his situation would very likely appreciate.  He came there from time to time, he stayed there absolutely without recompense, he was cleaned up from a lousy condition more often than once while he was there, and he killed the canary on this particular day.  Now, he was a close and grasping man.  He knew the value of money. That is evident.  He knew that $5,000 was more than compensation in the market for these things which had been rendered to him, and

hence he put that heading "Unique Charity." But I understand the law to be that a person may give an exorbitant price for a thing if he sees fit to do it, and, even though he acknowledges himself that the price he gives is in effect a charity to a great extent, yet a promise to so pay is a good promise and enforceable in the law. They may fix such a measure of compensation for services as they may see fit. He saw fit to put a value on it with those words. The trouble and the services express the consideration for the paper, what he was paying for, as well as the words, "the canary." Now, we do better justice to give the words the practical interpretation than to depend upon subtleties which probably do not enter into the minds of people when they are doing such a thing. I think the man there wanted to make a payment in consideration for values which he had received. He had a right to do that. He wanted to make a compensation which he knew to be beyond the actual value, but which he was willing to put as a value, and hence he called it a "Unique Charity." That is my interpretation of it. I think he had an absolutely legal right to do it, and that the paper is a valid paper and enforceable.

Decreed accordingly.