WALTON WATER COMPANY, Respondent, *v.* THE VILLAGE OF WAL-
TON, NEW YORK, Appellant.

Third Department, January 17, 1924.

Water works companies — contract to supply water to village — valuable
consideration not shown by provisions that company would care for
hydrants at expense of village and have control thereof, and that village
would not detach hydrants without consent of company — forbearance
of village to prevent company from laying mains on ground that com-
pany was illegally incorporated not shown as consideration — company
was legally incorporated — contract based on subsequent forbearance
was not pleaded by village.

A valuable consideration for a contract between a water company and a village
whereby the company agreed to furnish water for fire protection purposes, free
of charge, is not shown by a clause in the contract to the effect that the company
would take care of and make all necessary repairs to the hydrants at the expense
of the village, which hydrants were installed at the expense of the village, and
would have control of the hydrants, except for fire purposes, and that the village
would not detach the hydrants from the main pipes without the consent of the
company.

The contention by the village that a consideration for the contract is to be found
in its forbearance, at the request of the company, to sue the company in equity
to restrain it from laying mains and maintaining them in the village, which
action was to be based upon the illegality of the incorporation of the company,
is not sustained by the evidence, since it appears that the company was legally
incorporated and there is no evidence that the company requested the village
to forbear commencing an action to restrain it from laying its mains.

Illegality in the incorporation of the company is not shown by the fact that seven-
teen persons were named as members of the corporation in its certificate of
incorporation, whereas only seven persons applied to the village under chapter
737 of the Laws of 1873, since the proof shows that the seven persons who applied
to the village did actually meet and organize as required by the statute, prior
to the filing of the certificate of incorporation, and the original applicants having
effected the preliminary organization, it was entirely proper that they should
thereafter associate others with themselves to be named as members of the
corporation in the certificate of incorporation.

The contention by the village that forbearance on its part constituted a considera-
tion for the contract cannot be entertained for the further reason that a contract
of that character was not pleaded by the village and is inconsistent with its
answer, which specifically alleges that the company was duly organized and had
complied with all the provisions of the acts under which it was incorporated.

HINMAN, J., dissents, with opinion.

APPEAL by the defendant, The Village of Walton, New York,
from a judgment of the Supreme Court in favor of the plaintiff,
entered in the office of the clerk of the county of Delaware on the
1st day of August, 1923, upon the decision of the court rendered
after a trial before the court, a jury having been waived.

*Arthur E. Conner* [*H. C. Stratton* of counsel], for the appellant.

*A. G. Patterson,* for the respondent.

H. T. KELLOGG, J.:

The question in the case is whether a written instrument, dated August 21, 1879, executed by the plaintiff and the defendant, wherein the former, a water works company, promised to furnish the latter, an incorporated village, with water for fire protection purposes, free of charge, as long as the former's water works existed, was supported by a valuable consideration and constitutes an enforcible contract.

The terms of the contract are set forth in paragraphs which are numbered from one to five. The 1st paragraph provides that the Walton Company shall procure for the village eighteen hydrants, and connect seventeen of them with its main pipes at points theretofore designated by the company's engineer. The 2d paragraph provides that the village shall pay for the hydrants, as well as for the service of setting and connecting them, the actual cost thereof, not exceeding certain sums stated; that the title to all hydrants put in shall remain in the village. The 3d paragraph provides that the Walton Company, should it in future desire to extend its pipe lines, must give notice of its intention to the trustees of the village; that the trustees must then determine the number of hydrants to be located upon the new pipe lines and designate their location; that the hydrants shall be procured and attached as were the original seventeen; that the village shall pay the actual cost thereof when ready for use; that the Walton Company shall determine the hydrants to be used. The 4th paragraph reads as follows: "*Fourth.* Said Company, its successors or assignees shall furnish water and the Village shall have free use thereof from such Hydrants at all times for fire purposes without charge so long as such Water Works exist." It will be noted that the village by these paragraphs employs the Walton Company to purchase hydrants for it, and to set and connect them. It agrees to pay therefor only the actual cost not exceeding certain sums stipulated. If the hydrants plus the setting and connecting cost more, the Walton Company, not the village, must pay for the excess. Thus the Walton Company can make no profit from the transaction. The four paragraphs will be searched in vain for a provision whereby the village promises that which may constitute either a detriment to itself or an advantage to the company.

The 5th and last paragraph of the contract contains the following: "*Fifth.* Said Company shall take care of and make all necessary repairs to such Hydrants and connections, at the expense

of the Village, and have control thereof except for fire purposes, and the Village shall not detach the Hydrants from the main pipes without the consent of the Company." It is upon these provisions that the village chiefly relies to establish its case of a valuable consideration furnished. The provisions, although contained in a single sentence, nevertheless deal with three distinct subjects, and must be considered separately. *First.* The Walton Company must take care of and repair the hydrants at the expense of the village. No benefit could result to the Walton Company from this provision. It is to receive from the village only the " expense " of the care exercised and the repairs made. Neither could the village suffer a detriment. The provision shifts the burden of making repairs from the shoulders of the village to the shoulders of the company. That is a detriment to the company not to the village. *Second.* The company is to have " control " of the hydrants and its connections. " Control " is not " use." The contract in no place provides that the company may " use " the hydrants to obtain water, at the sites thereof, for its own purposes. Even if " control " does signify " use " there could be no " use " which the company might make of them. The company could not flush its mains by means of the hydrants for, without a further license from the village, it would be guilty of a trespass if it cast streams of water, drawn therefrom, upon the village streets. Neither could it furnish water therefrom to customers other than the village. The streets of a village are dedicated to travel not to trade. It could furnish water, for other than fire purposes, to the village, only at the option of the village. The village, then, by the contract, conferred no benefit in that respect, since this use of the water might or might not be made, accordingly as the village, the promisee in the instrument, might or might not subsequently choose. Neither can it be said that the village, by the provision, suffers a detriment. The hydrants are to belong to the village. Yet hydrants are useless unless connected with water mains. Even then they are useless except to provide water. The Walton Company, free of charge, furnishes the connections and the water. If it retains " control " of the hydrants, except for fire purposes, it restricts, by so much, its own gift to the village, and the village foregoes nothing otherwise given or possessed. *Third.* The village is not to detach the hydrants without the consent of the company. Here is no advantage to the company. If the company were not making a gift of the right of connection there would be no need of a provision barring disconnection not consented to by it. What it receives for its gift, therefore, is a mere restriction upon the thing given. That is not an exchange of values between the parties. All that

is given is given by the company. The village confers nothing and foregoes nothing. " A promisor cannot give himself consideration for his own promise." (Willis. Cont. § 102a.)

Even if it should be thought that by paragraph 5 the village confers some benefit, however small, or suffers some detriment, however inadequate, it does not of necessity follow that the village furnishes a valuable consideration for the promise of the company. " Though a peppercorn *may* be sufficient consideration for a promise, whether or not it is, depends on whether it was in fact the exchange or at least a requested detriment induced by the promise." (Willis. Cont. § 100.) " The mutual consent necessary to every contract must extend to the consideration as well as to the promise." (Langdell's Cases on Contracts, 1022, Summary, § 66.) A glance at paragraph 5 discloses that its sole purpose is to protect the Walton Company against the injurious consequences which might result from a free gift to the village of water and a water connection. The company reserves partial " control " of the hydrants; it stipulates to make repairs; it provides against disconnections without consent. All this is done to protect the water flow in its mains against wastage by means of the hydrants. This would without fail ensue if the hydrants were not properly repaired, were not subject to proper " control," and were not disconnected, when severance was desired, by suitable methods. Self-protection, not consideration, therefore, is the purpose of the paragraph. Consequently, it seems to me that, although unwittingly the village may have furnished a " peppercorn " of benefit or of detriment, that " peppercorn " was never, in the estimation of the parties, a " peppercorn " of consideration. That none of the paragraphs of the instrument, including paragraph 5, disclose a consideration given by the village, and that the promise of the Walton Company is unsupported by a consideration, is borne out by the provisions of paragraph 4. It is thereby stipulated that the company " shall furnish water and the Village shall have *free* use thereof  *  *  * without charge." If water is to be furnished " free " and " without charge " it is not to be furnished for a consideration.

The village contends that, apart from the contract terms, a valuable consideration was supplied by it. Its argument runs in this wise: The plaintiff was never legally incorporated; not being legally incorporated it could not lawfully have laid its mains in the village streets under the provisions of the statute then governing the incorporation of water works companies; there was at least an honest dispute as to the non-incorporation of the plaintiff; the defendant village, in consideration of the promise of the plaintiff, contained in the written instrument, to furnish free water, there-

after forbore to sue the plaintiff in equity to restrain it from laying mains and maintaining them in the village streets; such forbearance on its part constituted a consideration for the promise of the plaintiff.

It was formerly held that actual forbearance, without a promise to forbear, did not constitute a valuable consideration sufficient to support a promise. (*Perkins* v. *Proud*, 62 Barb. 420; *Atlantic National Bank of New York* v. *Franklin*, 55 N. Y. 235.) In the latter case Judge RAPALLO said: "Mere indulgence, without a valid agreement for forbearance, does not constitute a valuable consideration." Such is not now the law in this State. (*Strong* v. *Sheffield*, 144 N. Y. 392.) Forbearance for a reasonable time, if forbearance is requested by the promisor, constitutes a consideration. (Willis. Cont. § 136; *Strong* v. *Sheffield, supra.*) The defendant village, in order to make out a case of forbearance, however, must here have shown that the cause of action which it forbore to sue was an honest cause preferred in good faith. "In the absence of fraud or duress, a settlement of a disputed claim preferred in good faith by a promisee against a promisor is a legal consideration for a promise." (*Wahl* v. *Barnum*, 116 N. Y. 87.) "It is said that the resignation of a plausible or colorable claim by a settlement between the parties, constitutes a good consideration." (*Zoebisch* v. *Von Minden*, 120 N. Y. 406.) The defendant must also have shown that its forbearance was requested by the plaintiff. (*Strong* v. *Sheffield*, 144 N. Y. 392.) "But forbearance for a reasonable time *if requested* is a sufficient consideration even though no promise of forbearance is made, a unilateral contract being as good as a bilateral. Mere forbearance *without request*, however, is insufficient." (Willis. Cont. § 136.)

The plaintiff claims to have been incorporated under the provisions of chapter 737 of the Laws of 1873. That act, in section 1 thereof, provided that any number of persons not less than seven might thereafter organize under its provisions a water works company in any town or village of the State. It provided in section 2 that when seven or more persons were thus organized they should present to the town or village authorities an application giving the names of the persons proposing to form the company, stating the proposed capital stock, the proposed number and character of the shares of capital stock, and designating the streams or ponds from which it was proposed to provide water; that the authorities should within thirty days determine whether the application should be granted; that, if the application were granted, the authorities should make a certificate to that effect and transmit it to the persons making the application. It further provided as follows:

" The persons named in such application shall thereupon meet and organize as a water-works company under such corporate name as they may select.   They shall file in the office of the Secretary of State a certificate of such organization.   Said certificate shall contain the name of the corporation, the names of the members of said corporation and their residences, the amount of capital stock, the location of the office of said company."   It further provided that upon the filing of the certificate the water works company should be known and deemed a body corporate.   Section 4 provided as follows:   " Any corporation organized under the provisions of this act may, and they are hereby authorized and empowered to lay their water pipes in any streets or avenues or public places, in any streets or avenues of an adjoining town or village, to the town or village where their application shall have been granted."   (See, also, Laws of 1877, chap. 171, amdg. said § 2.)

On August 23, 1878, a written application was presented to the supervisor of the town of Walton and to the trustees of the village of Walton.   To this application there were appended the signatures of S. Comstock, N. C. Wood, N. Fitch's Sons, J. H. Townsend, George St. John, S. H. St. John and John Babcock.   The application stated that the signers were desirous of forming a stock company, under chapter 737 of the Laws of 1873, for the purpose of supplying the village of Walton with pure and wholesome water, and set up the various facts required to be stated by the provisions of that act.   On September 4, 1878, the president and trustees of the village of Walton, together with the supervisor of the town of Walton, granted the application and made a certificate to that effect.   On the 29th day of May, 1879, a certificate of incorporation was filed.   It recited that an application had been made by Strong Comstock, N. C. Wood, N. Fitch's Sons, J. H. Townsend, George St. John, S. H. St. John and John Babcock for leave to supply the village of Walton and its inhabitants with pure and wholesome water; that the application had been granted by the trustees of the village of Walton and the supervisor of the town of Walton; that certificates proving the granting of the application had been duly filed.   It then certified concerning the organization of the water works company as follows:   " Now therefore we hereby certify that on the 22d day of May, 1879, the persons named in said application met and organized as a water work company under the corporate name and style of The Walton Water Company with a capital stock of fifteen thousand dollars and that the office of said Company is located in the Village of Walton, Delaware County, New York."   It further certified to the names of the

members of the corporation and their places of residence, in which certification seventeen persons were named. Ten of these persons had not been named in the original application.

The defendant makes the point that the plaintiff was not legally incorporated for the reason that seventeen persons were named as members of the corporation instead of the seven persons who originally signed the application. In support of this argument it cites that portion of the act of 1873 already quoted, which reads as follows: " The persons named in such application shall thereupon meet and organize as a water-works company under such corporate name as they may select." That such persons did meet and organize as a water works company, under the corporate name of The Walton Water Company, is shown by the certificate itself wherein it is stated that the " persons named in said application " so met. It is also evidenced by a stipulation entered into between the parties to the action which reads as follows: " That the incorporators of the Walton Water Company were: Strong Comstock, N. C. Wood, A. S. Fitch, G. W. Fitch, J. H. Townsend, George St. John, S. H. St. John and John Babcock, and that after the incorporation and during the years 1878 and 1879, Strong Comstock was the president of said corporation and N. C. Wood was the Secretary." Evidently, A. S. Fitch and G. W. Fitch thus named in the stipulation composed N. Fitch's Sons named in the application. The statute did not provide that the original applicants should alone be members of the corporation. It merely required that the original applicants should meet and organize. A preliminary organization of the original applicants, as a corporation under the selected corporate name, prior to the filing of a certificate of incorporation, was thus called for. Thereafter, through the filing of a certificate, the corporation was to come into being as a legal entity. The original applicants having effected the preliminary organization it was entirely proper that they should thereafter associate others with themselves to be named as members of the corporation in the certificate of incorporation. It is entirely clear, therefore, that the plaintiff was legally incorporated. Having been legally incorporated it acquired under the act of 1873 a right to lay its water pipes in the streets of the village of Walton. To the acquisition of this right a consent or license, of the village of Walton was wholly unnecessary. We think that the claim of the defendant village that the plaintiff was not legally incorporated never constituted a doubtful or colorable claim, that it was never preferred against the plaintiff in good faith, and that its forbearance to sue the plaintiff in equity to restrain it from laying pipes in the village streets did not constitute a valuable consideration.

We think that there is an absence of proof that the forbearance of the defendant to bring suit was prompted by a request from the plaintiff. The written instrument is apparently complete on its face. It contains no word from the plaintiff requesting the defendant not to sue, and no word from the defendant promising to forbear. Strong Comstock, one of the original applicants and the first president of the plaintiff, testified: " Was there any money paid to or consideration received by or on behalf of the Walton Water Company for or on account of said instrument [the contract]? " He answered, " No." He was asked, " Did the document, Exhibit No. 1 (D) [the contract] represent the entire agreement and arrangements between the parties relating to the matters therein referred to? " He answered, " Yes, it did." He testified that just prior to the making of the contract the plaintiff had entered into an agreement with a contractor for the construction of the water works; that the contractor was at work with a large force of men; that the dam was in process of construction and the streets were trenched; that the trustees of the defendant claimed there was an irregularity in the incorporation of the plaintiff; that they stated that they intended to bring action to stop the work of the plaintiff by injunction; that the only thing said by the defendant's officers in justification of their demand for free water was that the plaintiff had been given the privilege of occupying and laying mains in the streets; that the plaintiff signed the contract to avoid litigation. No other testimony was given upon the subject. We think that this testimony failed to establish a request from the plaintiff not to sue, and failed to show that the parties intended that there should be an exchange of actual forbearance by the defendant in return for the promise of the plaintiff to provide free water.

The defendant now contends for a contract which it did not plead. It asserts a promise made in consideration of subsequent forbearance. If such were the promise made it became binding only when thereafter the consideration of forbearance had been performed. No such contract is set up in the answer. The defendant merely alleges that " on or about August 21, 1879, the plaintiff and defendant, for a good and valuable consideration, duly entered into a contract in writing which was signed and executed by each of them, a copy of which is hereby annexed marked Exhibit A  *  *  *." If the defendant's present contention is correct then at the time the so-called contract was " entered into " no " valuable consideration " was given and no legal contract was then made. The answer says nothing of forbearance. It fails to state that the defendant, after the execution of the instrument, forbore to sue the plaintiff for a reasonable time. Indeed, the

defendant's theory of consideration is negatived by the answer, for that pleading expressly asserts that the plaintiff " was a duly organized, incorporated and existing water works company, and created, formed, incorporated and chartered under and by chapter 737 of the Laws of 1873, and the acts amendatory thereof," and that the plaintiff " had complied with all of the provisions of such acts." This assertion is inconsistent with the present contention of the defendant that it forbore to bring suit to enjoin the plaintiff on the ground that it had not been legally incorporated.

The promise of the plaintiff contained in the instrument was a promise to provide water " so long as such Water Works exist." This was an agreement which by its terms was not to be performed within a year. It was, therefore, within the Statute of Frauds, and the full agreement must have been in writing. Assuming that the defendant's present contention is correct, then the promise of the plaintiff was not absolute but conditional upon the subsequent forbearance of the defendant. The instrument sets forth no such conditional promise. That the written agreement is, therefore, unenforcible is a proposition backed by respectable authority. (*Trustees of Hamilton College* v. *Stewart*, 1 N. Y. 581; *Barnes* v. *Perine*, 12 id. 18; *Drake* v. *Seaman*, 97 id. 230.)

For the reasons stated we think that the judgment should be affirmed, with costs.

All concur, except HINMAN, J., dissenting, with an opinion; McCANN, J., not sitting.

HINMAN, J. (dissenting):

I would be convinced that this judgment should be affirmed except for one thing. It seems to me that proper construction has not been given to one of the provisions of the 5th clause of the contract itself, which as I view it furnishes a consideration. The 5th clause provides: " Said Company shall take care of and make all necessary repairs to such Hydrants and connections, at the expense of the Village, and have control thereof except for fire purposes, and the Village shall not detach the Hydrants from the main pipes without the consent of the Company." Mr. Justice KELLOGG seems to think that the words " have control thereof " signify a burden or obligation rather than a benefit to the plaintiff. I cannot so construe them. This 5th paragraph contains by its express language more than obligations on the part of the company. It expressly indicates an obligation on the part of the village to pay the expense of the care and repairs of the hydrants and connections and to refrain from detaching the hydrants without consent of the company. I think it is reasonable to suppose

that the word "control" was used in a permissive sense rather than in the sense of an obligation. I think it was intended that the company should control the use and have the right to use except for fire purposes. This is borne out by the last clause of that paragraph which safeguards the right of the company to use these hydrants for other than fire purposes. As a matter of fact the company did use the hydrants for its own purposes and for its own profit during this period. In order that the hydrants be under the control of the water company, the water company must have the right to turn them on and turn them off, to attach hose or pipes to them, draw water through them and in a word use them. If the village could prohibit their use other than in times when fire protection was necessary, it cannot be said that the water company has control of them. The thing which the water company promised was the furnishing of the water. The benefit which the water company received was an outlay of $4,000 or $5,000 for the construction of these hydrants and their care and repair at the expense of the village, which hydrants, so paid for and maintained, the company could use for its own benefit and profit under its right to control except for fire purposes, and the village could not detach the hydrants from the main pipes without the consent of the company. The village obtained the benefit of the water for fire purposes, which was the property of the water company and the village paid for the water by the erecting and agreeing to repair the hydrants. The water company obtained the benefit of the use of the hydrants, the property of the village, without having to expend the necessary moneys for the construction and repair of the hydrants. Here was a mutual consideration, a benefit to each promisor in the use of the other's property and a detriment to each promisee in that the property of each was subjected by the contract to a limited use by the property owner. It may be that the control of these hydrants was not of very great value to the company. Perhaps the value may have been trivial. Nevertheless you cannot say it was not in contemplation of the parties because the parties embodied a clause in relation to the same in the contract. It is well known that hydrants are used for flushing streets; to supply water for sprinkling streets and to supply water for public improvements in streets where large quantities of water are necessary. In fact it appears in this case that the hydrants were utilized for the purpose of flushing the plaintiff's system and for the purpose of sprinkling the public streets of the village and for other purposes for which it has received compensation from the defendant and from other persons. This is some consideration, although it may have been a bad bargain on the part of the com-

pany. Still a contract cannot be set aside for the reason that the court does not think that the consideration is adequate. If there is any consideration, it must be sustained. I think the seventeenth proposed finding of fact by the defendant should have been found rather than refused.

Judgment affirmed, with costs.