MIRIAM X. FREDENBURG, Plaintiff, *v.* LOUISE H. FREDENBURG, Defendant.

Supreme Court, Special Term, New York County, May 15, 1936.

*Phillips & Avery* [*Talbot M. Malcolm* of counsel], for the defendant, for the motion.

*Baldwin, Hutchins & Todd* [*Francis A. Fullam, Jr.*, of counsel], for the plaintiff, in opposition.

SHIENTAG, J. The motion is to dismiss the complaint. The plaintiff, defendant's daughter-in-law, alleges that on March 23, 1927, an agreement was entered into whereby the defendant and her husband, now deceased, agreed with plaintiff's father to pay, jointly and severally, to the plaintiff an annuity from on or about June 1, 1927, and thereafter for life, of not less than $5,000 a year. This agreement, it is alleged, was made in consideration of plaintiff's father " consenting to and forbearing from obstructing the making of mutual promises to marry by and between plaintiff and defendant's son, and /or the marriage of the plaintiff and defendant's son, pursuant to any such mutual promises to marry, by inducing mutual rescission or modification of any such mutual promises to marry, or otherwise."

Plaintiff further alleges that her father performed the agreement on his part; that he " did consent to and forbear from obstructing the making of said mutual promises to marry and the said marriage, pursuant to the terms and provisions of said contract." By reason of such consent and forbearance on the part of plaintiff's father, mutual promises to marry were made between plaintiff and defendant's son on April 2, 1927, and they were married on June first of that year. The agreement was fully performed by defendant and her husband through the year 1931 and partially thereafter. Plaintiff now sues defendant, both individually and as executor of her husband's estate, for the remainder of the payments due from the year 1931 to the present, amounting to $14,342.54. Defendant moves to dismiss on the ground that there is no valid consideration for the contract and that it is void as an oral agreement under the Statute of Frauds.

There is no doubt that plaintiff may bring this action. It has long been settled law that a donee beneficiary related to the promisee by blood or marriage may maintain an action on a contract entered into for his benefit. (*Todd* v. *Weber*, 95 N. Y. 181; *Matter of Kidd*, 188 id. 274; *Buchanan* v. *Tilden*, 158 id. 109; *Seaver* v. *Ransom*, 224 id. 233.) The right to sue is not dependent on any legal obligation of the promisee to support the beneficiary, for " the natural and moral duty of the husband or parent to provide for the future of wife or child sustains the action on the contract made for their benefit." (*Seaver* v. *Ransom*, 224 N. Y. 233, 238.)

The gradual expansion of the doctrine of *Lawrence* v. *Fox* (20 N. Y. 268) may today make even this sort of an obligation from the promisee to the beneficiary unnecessary to entitle the latter to sue. (See *Graybar Electric Co., Inc.*, v. *Seaboard Surety Co.*, 157 Misc. 275.)

Cases dealing with contracts touching the marital relation command the utmost effort of the law " to hold men to the honorable fulfillment of engagements designed to influence in their deepest relations the lives of others." " It has enforced them at times where consideration, if present at all, has been dependent upon doubtful inference. (*McNutt* v. *McNutt*, 116 Ind. 545; *Appleby* v. *Appleby*, 100 Minn. 408.) " (*De Cicco* v. *Schweizer*, 221 N. Y. 431, 439.)

The thing bargained for in the instant case was the withdrawal of the father's objection to his daughter's engagement of marriage to defendant's son. This he did. There can be no doubt that the promisee forbore to assert a right which he might otherwise have legally pursued. A parent is absolutely privileged to induce his child not to enter into or to forsake a contract of marriage which he considers for any reason undesirable. (*Guida* v. *Pontrelli*, 114 Misc. 181; *Ryther* v. *Lefferts*, 232 App. Div. 552; *Attridge* v. *Pembroke*, 235 id. 101.) To surrender the exercise of this privilege is sufficient to support this promise. (*Phalen* v. *United States Trust Co.*, 186 N. Y. 178, 185; *De Cicco* v. *Schweizer*, 221 id. 431, 439.)

The defendant and her husband doubtless considered the parent's waiver of his objection to his daughter's marriage of some benefit to them. There may be times and circumstances when the withdrawal of family objections is of value though the marriage could legally take place without parental sanction. What the defendant really objects to is what she considers to be the inadequacy of the consideration. With that, however, the courts are not concerned. (*Walton Water Co.* v. *Village of Walton*, 238 N. Y. 46, 51; *De Cicco* v. *Schweizer, supra.*)

It may be argued with compelling force that what defendant and her husband really bargained for was the actual marriage. Implicit in the entire transaction is the fact that the agreement to pay an annuity to plaintiff for life was conditioned on her marrying the defendant's son. The complaint alleges that by reason of the consent and forbearance of plaintiff's father the intended marriage was in fact consummated. In this light the case is similar to that of *De Cicco* v. *Schweizer (supra)*, and there can be no question but that the marriage was a sufficient consideration.

The question as to whether the agreement here involved is void under the Statute of Frauds depends upon the law on the subject,

as it existed at the time of the making of the contract, March 23, 1927. The statute was amended in 1933 to include within its purview any agreement " the performance of which is not to be completed before the end of a lifetime." (Pers. Prop. Law, § 31, as amd. by Laws of 1933, chap. 616, in effect April 29, 1933.) This amendment has no retroactive effect so as to govern the agreement in this case. (*Ralph* v. *Cronk,* 150 Misc. 69; affd., 266 N. Y. 428.)

Under the law as it existed prior to the amendment cited, it was well settled that the oral agreements invalidated by the Statute of Frauds because not to be performed within a year included only those which could not be performed under any circumstances within that period. If full performance such as the parties intended could possibly, at the time the contract was made, be completed within a year, no matter how unlikely or improbable that might be, the contract was not within the statutory ban. (*Blake* v. *Voight,* 134 N. Y. 69; *Warren Chemical & Mfg. Co.* v. *Holbrook,* 118 id. 586.)

From these propositions certain distinctions were drawn which candor obliges me to say were rather legalistic and refined. Thus, for example, an agreement made to pay X a sum of money for life, payments to commence within a year from the date when the contract was made, was considered to be one capable of being fully performed within a year and, therefore, not within the Statute of Frauds. (*Ponchelet* v. *Campagnie Generale Transatlantique,* N. Y. L. J. Jan. 5, 1933, at p. 69; affd., 239 App. Div. 817; *McLees* v. *Hale,* 10 Wend. 426; *Moore* v. *Fox,* 10 Johns. 244; *Dresser* v. *Dresser,* 35 Barb. 573; *Kent* v. *Kent,* 62 N. Y. 560; *McCabe* v. *Green,* 18 App. Div. 625.) On the other hand, an agreement made to pay X a sum of money for life, under which payments were not to commence till more than a year from the date of the contract's making, was within the statute and void. (See Williston Cont. [1924] § 496; Anson Cont. [Corbin's ed.] § 100; *Wahl* v. *Barnum,* 116 N. Y. 87.)

The defendant contends that the present contract illustrates the principle involved in the second of the hypothetical cases. She argues that since this contract is to pay an annuity, the first payment would not be due until a year from June 1, 1927, more than a year from the date when the contract was made. But though the word " annuity " is used, the time when payments were to be made depends upon the intent of the parties. Payment of an annuity does not necessarily have to be made at the end of the year. (*Booth* v. *Ammerman,* 4 Bradf. 129.)

The question of what the parties intended is to be determined eventually by the trial court upon all the evidence. Plaintiff, on

this motion, is entitled to the most favorable inferences to be drawn from the complaint and the affidavits. The contract by itself is capable of being interpreted to mean either that the first payment was due on June 1, 1927, or a year from that date. The conduct of the parties, what plaintiff said they actually did, can, therefore, be considered as evidence of what they themselves intended when the contract was made. Plaintiff's affidavit sets forth that payments were in fact made on a monthly basis beginning on June 1, 1927, the date of the marriage. The fair inference to be drawn from the parties' actions is that they intended payments to be commenced some time prior to March 23, 1928. The contract would then be one capable of being fully performed within a year, and not one within the provisions of the Statute of Frauds in force at the time the contract was entered into.

The motion to dismiss the complaint is denied.