MARIE HARVEY, Plaintiff, *v.* J. P. MORGAN & Co., Defendant.

Municipal Court of New York, Borough of Queens, Fourth District, December 24, 1937.

*Warren J. Dyckman*, for the plaintiff.

*Davis, Polk, Wardwell & Reed* [*Ralph M. Carson* of counsel; *Cornelius W. Wickersham, Jr.*, with him on the brief], for the defendant.

PETTE, J.   Plaintiff herein sues on an alleged oral contract, which is based upon a claim against the defendant for personal injuries sustained by her while in its employ.   The accident occurred in the latter part of January, 1928, when a filing cabinet drawer fell, injuring her foot.   The plaintiff received medical treatment for some time from the doctors employed by J. P. Morgan & Co. Plaintiff received her regular compensation during this period.   Subsequently, the plaintiff alleges a conversation took place on or about January 2, 1929, with Dr. H. T. Lee and that said Dr. Lee stated that the defendant had decided to offer her a pension.   Following this conversation, plaintiff testified that she spoke to E. E. Thomas, the personnel manager in the defendant's office, and that he reaffirmed the conversation with Dr. Lee with respect to the alleged pension, which she claims was for life.   She further testified that she thereupon thanked Mr. Junius Morgan, a partner in the defendant company, for his generosity, who made no reference whatever to the lack of authority of the defendant's agent or employee to act in its behalf.

The plaintiff contends: (1) That she has a valid cause of action in contract based upon her original cause of action in negligence for the injuries sustained by her in the defendant's office, and that the defendant had no compensation insurance at the time of the accident; (2) that she compromised her claim with the defendant in consideration of her forbearance of suit; (3) that the contract entered into by her with the defendant for the payment of a pension to her for life is irrevocable, being founded upon a good and valuable legal consideration, although its adequacy may be challenged; (4) and finally, that there was sufficient ratification of the acts of its employees by the defendant through the conduct of Junius Morgan and other partners in issuing and delivering to the plaintiff periodical checks in confirmance of said agreement from January, 1928, up to and including December, 1935, a period of approximately seven years.

In the present action the plaintiff seeks to recover the monthly payments under said agreement for January, February, March and April, 1936.

The answer denies the material allegations of the complaint and interposes the additional defenses of (a) Statute of Frauds; (b) want of consideration in that payments were in the nature of a gratuity; (c) Statute of Limitations.

The testimony herein was duly taken at great length before the court and jury.   Upon the conclusion of the trial both sides moved for a directed verdict, taking the case from the jury as to the ques-

tions of fact and placed both the questions of law and fact in the court for final decision.

The questions presented upon the trial are many in number and require careful consideration.

To begin with, there is the basic problem as to whether or not a valid contract was entered into by and between the plaintiff and the defendant to give her a " pension for life." This necessarily involves the preliminary vital issue as to whether there was a valid consideration supporting the alleged agreement.

Consideration has been defined in various ways by the courts and text writers, as for example, a thing of some benefit or legal possibility of benefit to the promisor, or a thing of some prejudice to the promisee; or anything that may be detrimental to the promisee or beneficial to the promisor in legal estimation. (*Freeman* v. *Freeman*, 43 N. Y. 39.) A consideration may consist of " some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility, given, suffered, or undertaken by the other." (*Rector* v. *Teed*, 120 N. Y. 583, 586; *Union Bank* v. *Sullivan*, 214 id. 332, 339.)

" 'A classic form of statement identifies consideration with the detriment to the promisee sustained by virtue of the promise.' (*Hammer* v. *Sidway*, 124 N. Y. 538.) * * * ' The promise and the consideration must purport to be the motive each for the other, in whole or at least in part. It is not enough that the promise induces the detriment or that the detriment induces the promise, if the other half is wanting.' " (*Comfort* v. *McCorkle*, 149 Misc. 826; *Allegheny College* v. *National Chautauqua County Bank*, 246 N. Y. 369.) " There has grown up of recent days a doctrine that a substitute for consideration or an exception to its ordinary requirements can be found in what is styled a ' promissory estoppel.' (Williston Contracts, §§ 139, 116.) " (*Comfort* v. *McCorkle*, 149 Misc. 826.) Up to the present time, the Court of Appeals of this State has limited and confined the doctrine of promissory estoppel to their connection with the law of charitable subscriptions, and has not as yet modified " the general law of consideration." (*Comfort* v. *McCorkle*, 149 Misc. 826.)

Section 90 of the Restatement of the Law of Contracts provides: " A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." But the New York annotations thereto say: " This section announces a rule of promissory estoppel, applicable to charitable subscriptions, promises to make gifts, etc."

Generally, mere forbearance without request is insufficient to constitute a valid consideration. However, here there is definite testimony by the plaintiff that the defendant by its agents requested her to forbear in the prosecution of her suit or claim for which they procured her a monthly pension up to and including December, 1935.

" A detriment incurred in reliance on a promise is not valid consideration unless the detriment was requested as consideration." (Williston on Contracts, §§ 136, 139, pp. 300, 301, 308; *Walton Water Co.* v. *Village Water Co.*, 207 App. Div. 708, 712; *Comfort* v. *McCorkle, supra*, p. 828.)

As a general rule, the forbearance to assert or exercise a legal right is a sufficient consideration, and it is not necessary to show that such forbearance operated as a benefit to the promisor or a detriment to the promisee. (*Hamer* v. *Sidway*, 124 N. Y. 538; *Rogers* v. *Wiley*, 131 id. 527; *German-American Bank* v. *Schwinger*, 75 App. Div. 393; affd., 178 N. Y. 569.)

Though a person may in a sense have the legal right to bring an action on a totally unfounded claim, his refraining from doing so cannot constitute a consideration for an executory promise. (*Springstead* v. *Nees*, 125 App. Div. 230.) On the other hand, if a person asserts a claim in good faith, though it is unfounded in law, *his refraining from suing thereon will furnish a sufficient consideration.* Where such a person forbears to sue he gives up what he believes a right of action and the other party gets an advantage, and, instead of being annoyed with an action, he escapes from the vexation incident to it. (*Lockwood* v. *Title Ins. Co.*, 73 Misc. 296.) As heretofore shown and as said by HOUGHTON, J.: " It is not necessary in order to uphold a compromise agreement based upon a surrender or composition or compromise of a claim that the claim should be a valid one, or one that can be enforced at law. A promise made upon a settlement of disputes and to prevent litigation is made upon a good consideration, and the settlement of a doubtful claim will uphold a promise to pay a stipulated sum or do any other lawful act * * *. Courts from the earliest times have favored compromises of *bona fide* disputes and have held agreements therefor to be founded upon good consideration irrespective of the validity of the claim which was compromised." (*Minehan* v. *Hill*, 144 App. Div. 854, 858.)

An executory promise may furnish a legal consideration, and such a promise may, if so accepted as in the instant case, furnish the necessary consideration to support an accord and satisfaction of an existing claim. (*Spier* v. *Hyde*, 78 App. Div. 151, 158.) Here there is present a bilateral contract, containing mutual promises; the promise of the plaintiff constitutes the consideration for

the promise of the defendant, and, the other necessary elements being present, render the contract binding on and enforcible by either party. (*Justice* v. *Lang*, 42 N. Y. 493; *Britenstool* v. *Michaels*, 56 id. 607; *King* v. *Barnes*, 109 id. 267.) A promise to perform in a bilateral contract may be implied from the terms of the agreement as a whole. (*Eno* v. *Woodworth*, 4 N. Y. 249; *Clark* v. *Ulster, etc., R. R. Co.*, 189 id. 93; *Benedict* v. *Pincus*, 191 id. 377; *Alexander* v. *Equitable Life Assurance Soc.*, 233 id. 300; *Dairymen's League Co-operative Assn.* v. *Holmes*, 207 App. Div. 429; affd., 239 N. Y. 503.)

As said by CARDOZO, J.: " The law has outgrown its primitive state of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view today. A promise may be lacking, and yet the whole writing may be ' instinct with an obligation,' imperfectly expressed   *   *   *. If that is so, there is a contract." (*Wood* v. *Duff-Gordon*, 222 N. Y. 88, 91.)

A promise, however, is only to be implied to enforce a manifest equity and reach a result which the acts of the parties indicate that they intended to effect. (*Joseph* v. *Sulzberger*, 136 App. Div. 499.)

In the instant case the plaintiff had a claim against the defendant in January, 1928, upon which she might have instituted suit in negligence, had not the defendant seen fit by its agents or employees to request plaintiff's forbearance therein in consideration of the defendant's promise to reimburse her for her injuries during her life. At common law, it was the duty of an employer to provide a safe place of work, and furnish reasonably safe appliances with which to work. (*Rosa* v. *Volkening*, 173 N. Y. 590; *Spencer* v. *Worthington*, 44 App. Div. 496; *Pelow* v. *Oil Well Supply Co.*, 194 N. Y. 64; *Dowdell* v. *Lackawanna Steel Co.*, 198 id. 362.) The defendant conceded that it had no compensation insurance at the time of the accident, and it follows that the plaintiff had a cause of action for her injuries arising out of the defective and dangerous condition of the filing cabinet which was caused to fall and severely injure her foot.

The plaintiff performed all that was demanded of her as the condition of the defendant's promise, and that was sufficient. The Court of Appeals of this State has long held: " When one, acting on the faith of a promise, performs the condition upon which the promise was made, the promise attaches to the consideration so performed, and renders the promisor liable. After the promisor has had the benefit of the consideration for which he bargained, it is no defense to say that the promisee was not bound by the contract to do the act. (Addison on Contracts, 13; 1 Parsons on Contracts, 451; *Sands* v. *Crooke*, 46 N. Y. 564, 570.) " (*White* v. *Baxter*, 71 N. Y. 254, 260.)

With respect to the contention concerning the adequacy of the consideration for the defendant's promise to pay the plaintiff a pension for life, it is well to call the defendant's attention to the fact that the law has declared that the *slightest consideration is sufficient for the greatest undertaking*. (1 Clark, New York Law of Contracts, p. 544; *Oakley v. Boorman*, 21 Wend. 588, 594; *Walton Water Co. v. Village of Walton*, 238 N. Y. 46, 51; *Strobe v. Netherland Co., Inc.*, 245 App. Div. 573; *Fredenburg v. Fredenburg*, 159 Misc. 525.)

While the courts have sometimes spoken of contracts as not fair and conscionable, and for such reason not to be upheld, the reason for doing so is primarily based on an element of fraud, actual or constructive, and the inadequacy of the consideration does not at law go to its sufficiency if in fact it can be deemed of value. (*Jackson v. Alpha Portland Cement Co.*, 122 App. Div. 345; *Earl v. Peck*, 64 N. Y. 596, 598; *Trustees of Columbia College v. Lynch*, 70 id. 440; *Hamer v. Sidway*, 124 id. 538; *Ga Nun v. Palmer*, 216 id. 603; *Parsons v. Teller*, 188 id. 318, 325.)

Almost every bargain is incapable of being made exactly equal on both sides. A person may give or agree to give an exorbitant price for a thing if he sees fit. (*Matter of Todd*, 47 Misc. 35.) The facts upon the trial of this action established no fraud, actual or constructive, on the part of the plaintiff. It is quite probable that the defendant, a very reputable banking company, did not wish to be involved in a law suit with an employee for personal injuries sustained by her, and made this bargain to pension her for life. This court is in no position to weigh the extent of the consideration. (Clark, New York Law of Contracts, p. 544; *Oakley v. Boorman*, 21 Wend. 588, 594; *Walton Water Co. v. Village of Walton*, 238 N. Y. 46, 51.) Likewise, the amount of pecuniary consideration on which a promise to answer for the debt of another is based is immaterial; the nominal consideration of one dollar is fully effective. (*Childs v. Barnum*, 11 Barb. 14, affg. 3 Sup. Ct. 38.) In the case of services the courts have, with seeming accord, recognized the right of the person to whom the services are rendered to fix the amount that he will pay therefor, though excessive. (*Worth v. Case*, 42 N. Y. 362; *Earl v. Peck*, 64 id. 596; *Ga Nun v. Palmer*, 216 id. 603; *Niemoller v. Duncombe*, 59 App. Div. 614; affd., 172 N. Y. 621.)

" There is no general rule of equity," says JAMES, J., " which relieves a party from hard and unreasonable bargains after they become executed, merely because they are such. On the contrary, mere inadequacy is not a sufficient ground for avoiding a sale, unless the inadequacy is so gross as to afford presumptive evidence of actual fraud  *  *  *  or is attended with actual fraud, surprise, ignorance, mistake, delusion, or imbecility of mind." (*Parmlee* v.

*Cameron*, 41 N. Y. 392, 396.) A covenant is well supported in law and in equity by any consideration, however slight. (*Trustees of Columbia College* v. *Lynch*, 70 N. Y. 440, 445.)

Where a promisor requests a specific service, which may consist of an act of omission as well as of commission, and promises indemnity, reimbursement or compensation, it is immaterial whether the service rendered be beneficial to the employer or not; the inconvenience or injury or detriment to the promisee from the performance of the act, the making of the expenditures, or the omission to act is itself a legal consideration. (*Bohm* v. *Goldstein*, 53 N. Y. 634; *White* v. *Baxter*, 71 id. 254.) Where the controversy between the parties is well based according to their beliefs and understanding, the same may be the subject-matter of a compromise or settlement as in the present case. (*Sears* v. *Grand Lodge, A. O. U. W.*, 163 N. Y. 374.) Similarly where a person has become liable in tort to the owner of property for its wrongful use, *the waiver of the tort* is a sufficient consideration for the wrongdoer's promise to pay. If the dispute was *bona fide*, it matters not on which side the ultimate right may have been. This court will not look behind the compromise, even though the claim, if made in good faith, was unfounded in law and unenforcible. (*Dunham* v. *Griswold*, 100 N. Y. 224.) *In the absence of fraud or duress, a settlement of a disputed claim preferred in good faith by a promisee against a promisor is a legal consideration for a promise, and the fact that the promisor had a legal defense to the claim settled is no defense to an action on the new promise.* (*Wahl* v. *Barnum*, 116 N. Y. 87, 95.)

Nor do I feel that there is any element of estoppel here which goes to the extent of destroying plaintiff's vested rights under the contract. If there be any element of estoppel, it is equitable estoppel or estoppel *in pais*. The indispensable elements of " estoppel " are ignorance on the part of the party who invokes it, a representation by the party estopped which misleads, and an innocent alteration of position in reliance upon such representation, to one's damage. It is practically impossible to make a definition of estoppel which will apply to all cases, because estoppel rests largely upon facts and circumstances of the particular case. Generally, however, it may be said that a person making a representation or assuming a position which if not maintained would result in an injustice to another who, having a right to rely upon the representation or position assumed, has done so to his injury, is estopped. (*Welland Canal Co.* v. *Hathaway*, 8 Wend. 480; *Frost* v. *Saratoga Mut. Ins. Co.*, 5 Den. 154; *Brown* v. *Bowen*, 30 N. Y. 519; *New York Rubber Co.* v. *Rothery*, 107 id. 310; *Rothschild* v. *Title Guarantee & Trust Co.*, 204 id. 458.) It must have reference to the existence of some present or past fact.

A mere promise to do something, or not to do it, in the future cannot work an estoppel unless the promise or engagement is one on which the party to whom the promise or statement was made has acted to his disadvantage so that his status has been changed. There is in it an element of fraud, actual or constructive; and it has been said that such fraud lies beneath every equitable estoppel. The party invoking the estoppel must prove that he has been misled to his prejudice. (*Trustees, etc., of Brookhaven* v. *Smith*, 118 N. Y. 634; *Parsons* v. *Lipe*, 158 Misc. 32; affd., 269 N. Y. 630.)

In the instant case there was no possible deception; all the facts were as well known to one party as to another. The defendant here may not invoke the defense of estoppel.

The alleged defense of the Statute of Frauds interposed herein is without merit. Subdivision 1 of section 31 of the Personal Property Law provides:

" Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

" 1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime."

In the leading case of *Rochester Folding Box Co.* v. *Brown* (55 App. Div. 444; affd., 179 N. Y. 542) it was held that a parol agreement which does not, by its terms, extend for any definite time, is not void under the Statute of Frauds. The test of enforcibility under this statute is directed to the time of performance and not to the time of the incurring of the obligation under which performance is to be made. (*McCabe* v. *Green*, 18 App. Div. 625.) If full performance, such as the parties intended, could possibly, at the time of the making of the contract, be completed within a year, no matter how unlikely or improbable that might be, the alleged contract was not within the statutory ban. (*Blake* v. *Voight*, 134 N. Y. 69; *Warren Chemical & Mfg. Co.* v. *Holbrook*, 118 id. 586.)

An agreement made to pay X a sum of money for life, payments *to commence within a year* from the date when the contract is made, is considered to be one capable of being fully performed within a year and, therefore, not within the Statute of Frauds. (*Pronchlet* v. *Campagnie Generale Transatlantique*, N. Y. L. J. Jan. 5, 1933, at p. 69; affd., 239 App. Div. 817; *Dresser* v. *Dresser*, 35 Barb. 573; *Kent* v. *Kent*, 62 N. Y. 560.) On the other hand, an ageement made to pay X a sum of money for life, under which payments are not to commence till *more than a year from the date* of the contract's making, is within the statute and void. (See Williston Cont. [1924] § 496;

Anson Cont. [Corbin's ed.] § 100; *Wahl* v. *Barnum,* 116 N. Y. 67; *Fredenburg* v. *Fredenburg,* 159 Misc. 525.)

An analysis of the facts herein similarly eliminates the defense of the Statute of Limitations. In a suit for maintenance and care the cause of action is contractual. (*Marshall* v. *International Mercantile Marine Corp.,* 39 F. [2d] 551.) The alleged cause of action herein did not accrue until the breach of the alleged agreement in January, 1936. Subdivision 1 of section 48 of the Civil Practice Act provides: " The following actions must be commenced within six years after the cause of action has accrued: 1. An action upon a contract, obligation or liability expressed or implied."

The statute begins to run from the time when the cause of action accrues, unless some statutory exception postpones its operations. The right to relief accrues when the plaintiff first becomes entitled to maintain the particular action in question. (2 Carmody's New York Practice, p. 729.)

The defendant contends that neither Dr. Lee, of its medical department, nor Mr. Thomas, its personnel manager, had the authority, implied or expressed, to make the alleged contract to bind the defendant to support the plaintiff for life; nor was there any ratification in any manner respecting the same.

Generally, there can be no reliance on apparent authority unless the circumstances are such that the plaintiff is entitled to rely upon it. (*Deyo* v. *Hudson,* 225 N. Y. 602, 612, 614.) " If a third person has notice of a limitation of an agent's authority, he cannot subject the principal to liability upon a transaction with the agent in violation of such limitation." (Restatement of the Law of Agency, § 166. Cf. Id. § 167; Tiffany on Agency [2d ed.], § 19; 75 A. L. R. 1047; *Ernst Iron Works* v. *Duralith Corporation,* 270 N. Y. 165.) Plaintiff herein is entitled, under all the circumstances, to rely on defendant's employees' statements, particularly when they were sanctioned by word of mouth with Junius Morgan, a partner in the defendant company, and further by the ratification shown by the defendant's conduct in issuing and delivering to her checks for her salary, etc., from 1928 to 1936, inclusive. The question is always whether the particular act of the agent is within the scope of his actual or apparent authority, or as it has been stated, " whether the third party had reasonable grounds for believing, under all the facts of the case, that the principal had authorized the act." (Vance on Insurance, p. 306.) The question still remains one as to the extent of authority. (*Smaldone* v. *Ins. Co. of North America,* 162 N. Y. 530; *Manchester* v. *Guardian Assurance Co.,* 151 id. 88.) The scope of an agent's actual authority is determined by the principal's intentions or manifestation thereof to his agent. (*Wen Kroy Realty Co.*

v. *Public National Bank,* 260 N. Y. 84.) A principal is liable for acts of his agent which are ostensibly authorized. An agent employed to perform certain duties is deemed authorized to do it in the manner his business intrusted to him is usually done. (*Michaelyan, Inc.,* v. *N. J. Fidelity & Plate Glass Ins. Co.,* 234 App. Div. 855.)

Even though it may be contended that the original agreement to compromise the plaintiff's claim by the defendant's employee was unusual, nevertheless there is sufficient evidence upon the facts and testimony to sustain ratification by the defendant company. In the leading case of *Ramsey* v. *Miller* (202 N. Y. 72, 75) the Court of Appeals held: " One may ratify the acts of another purporting to be made on his behalf whether that other is an agent exceeding his authority or no agent at all. (Huffcut on Agency, § 30.) This principle is recognized by this court in *Hamlin* v. *Sears* (82 N. Y. 327), where Judge EARL said: ' The general doctrine that one may, by affirmative acts, and *even by silence, ratify the acts of another who has assumed to act as his agent, is not disputed.* It is illustrated by many cases to be found in the books, and set forth by all the text writers upon the law of agency. [Citing authorities.] The doctrine properly applies only to cases where one has assumed to act as agent for another, and then a subsequent ratification is equivalent to an original authority.' "

The defendant company as principal, to avoid ratification of its employees' acts, if they were unauthorized, should have repudiated the pension agreement within a reasonable time. Ratification for seven years by the defendant's conduct cannot be so easily disregarded. (*Fatta* v. *Edgerton,* 137 N. Y. 226.) The defendant, having once ratified its agents' acts, cannot afterwards avoid the effect of such ratification by showing that it was not acquainted with all the facts of the transaction ratified, when it was always in a position and was in possession of means of learning them. (*Glor* v. *Kelly,* 49 App. Div. 617; affd., 166 N. Y. 589.)

Ratification, as it relates to the law of agency, is the express or implied adoption of the acts of another by one for whom the other assumes to be acting, but without authority. (1 Am. & Eng. Ency. of Law [2d ed.], 1181, and authorities in note 2; *Stanton* v. *Granger,* 125 App. Div. 174; affd., 193 N. Y. 656.)

" It is said in 31 Cyc. 1247: ' In the literature of the law there has often been little inclination displayed to distinguish between ratification and estoppel *in pais.* * * * The substance of ratification is confirmation of the unauthorized act or contract after it has been done or made, whereas the substance of estoppel is the principal inducement to another to act to his prejudice. Acts and conduct amounting to an estoppel *in pais* may in some instances amount

to a ratification; but, on the other hand, ratification may be complete without any of the elements of an estoppel, and if the act or contract in question has in fact been ratified, and the ratification is sufficient, there is no need of invoking the doctrine of estoppel.' " (*Stiebel* v. *Haigney*, 134 App. Div. 516, 520.)

In *Merritt* v. *Bissell* (155 N. Y. 396) MARTIN, J., said: " ratification of the unauthorized act of an agent, or of a stranger who claims to act as such, if it exists, must be found in the intention of the principal, either express or implied. If that intention cannot be shown no ratification can be held to have been established. While it is the duty of a principal to disavow the unauthorized act of his agent within a reasonable time after it comes to his knowledge, or otherwise, in some cases he makes the act his own, still, where one who has assumed to act as an agent for another has no authority to do so, but is a mere volunteer, a failure to disavow his acts will not amount to a ratification unless under such circumstances as indicate an intention to do so."

The preceding principles are applicable to the instant case. Plaintiff proved conclusively, not only the authority of the defendant's employees to make a contract for a " life pension," but also proved that Junius Morgan had ratified the agreement with full knowledge of the facts and with full intention to do so, and the defendant company continued to do so for seven years thereafter.

Judgment is hereby rendered in favor of the plaintiff and against the defendant in the sum of $566.64.