WALTON WATER COMPANY, Respondent, v. THE VILLAGE
OF WALTON, Appellant.

**Villages — water works corporations — contracts — contract
to supply water to village for fire purposes without charge —
when agreement by village that hydrants could not be removed
without consent by company and permission to use hydrants
for other purposes, sufficient consideration to support contract.**

1. Courts are slow to say that promises bearing upon their face the
outward or formal tokens of a contract with mutual obligations, shall
be set at naught on the assumption that the parties were oblivious of
the advantages and burdens of their reciprocal engagements.

2. A water works corporation entered into a contract with an incor-
porated village to install and maintain hydrants at designated places
in the streets, the village to have title to the hydrants and pay for
them and the installation thereof. The company for itself, its
successors and assignees, agreed to furnish water for extinguishing
fires so long as the water works exist. The village on its part agreed
that the company should have control of the hydrants except for
fire purposes and that the village would not detach the hydrants
from the main pipes without the consent of the company. The
company cannot now repudiate the agreement to furnish water for
fire purposes without charge and collect pay for the same upon the
ground that there was no consideration for its promise. Considera-
tion was not lacking, whether the test be benefit to the promisor or
detriment to the promisee. Except for fire purposes the company has
complete control of the hydrants, which cannot be removed without its
consent. It sells water therefrom to the village and others for sprinkling
the streets and for other purposes. The existence of these hydrants,
installed under such agreement, gives the company the advantage if
competition should arise and supplies a reasonable expectancy that the
village will not permit a duplication of hydrants by a rival corporation.
There is, also, detriment to the village from its promise that the
hydrants shall remain. All these things constitute a consideration suffi-
cient to sustain the promise of service for fire purposes without charge.

*Walton Water Co.* v. *Village of Walton*, 207 App. Div. 708, reversed.

(Argued February 26, 1924; decided April 1, 1924.)

APPEAL from a judgment of the Appellate Division
of the Supreme Court in the third judicial department,
entered January 24, 1924, affirming a judgment in favor

of plaintiff entered upon a decision of the court at a Trial Term, a jury having been waived.

*H. C. Stratton* and *Arthur E. Conner* for appellant. The contract made between the plaintiff and defendant whereby the plaintiff agreed to furnish water for fire protection to the village was and is a legal and binding contract; authority for the execution of it was conferred by statute at the time of its execution. (*Pond* v. *N. R. Water Co.*, 183 N. Y. 330; *Farnsworth* v. *Boro Oil & Gas Co.*, 216 N. Y. 40; *Village of Bolivar* v. *Bolivar Water Company*, 62 App. Div. 484; *Columbus Railway & Power Co.* v. *Columbus*, 249 U. S. 399; *Skaneateles Water Works Co.* v. *Vil. of Skaneateles*, 161 N. Y. 154; *Barhite* v. *Home Tel. Co.*, 50 App. Div. 25; *Vil. of Oxford* v. *Willoughby*, 181 N. Y. 155; *Vil. of Haverstraw* v. *Eckerson*, 192 N. Y. 54; *Ghee* v. *Northern Union Gas Co.*, 158 N. Y. 511; *Adamson* v. *Nassau El. R. R. Co.*, 89 Hun, 261; *International Ry. Co.* v. *Rann*, 224 N. Y. 83; *Baker* v. *N. Y. Interurban Water Co.*, 184 N. Y. Supp. 833; *Rigney* v. *N. Y. C. & H. R. R. R. Co.*, 217 N. Y. 31; *Matter of Quinby*, 223 N. Y. 244; *People ex rel. Village of South Glens Falls* v. *Pub. Serv. Comm.*, 225 N. Y. 216; *Matter of City of Niagara Falls* v. *Pub. Serv. Comm.*, 229 N. Y. 333.) There was ample and actual consideration between the plaintiff and defendant for the making of the contract of August 21, 1879. (*White* v. *Hoyt*, 73 N. Y. 515; *Marie* v. *Garrison*, 83 N. Y. 14; *Cox* v. *Stokes*, 156 N. Y. 491; *Springstead* v. *Nees*, 125 App. Div. 230; *Eysman* v. *Nelson*, 140 N. Y. Supp. 183; 13 C. J. 346.) The contract was a legal and enforcible agreement and contained mutual promises and agreements which were good and sufficient considerations therefor. (*Komp* v. *Raymond*, 175 N. Y. 102; *Hamer* v. *Sidway*, 124 N. Y. 538; *Gould* v. *Banks*, 8 Wend. 562; *L'Amoreaux* v. *Gould*, 7 N. Y. 349; *Willis* v. *Sun Mutual Ins. Co.*, 45 N. Y. 45; *White* v. *Baxter*, 71 N. Y. 254; *Melville* v. *Kruse*, 174 N. Y. 306;

*Wells* v. *Mann,* 45 N. Y. 327; *Ga Nun* v. *Palmer,* 216 N. Y. 603; *Earl* v. *Peck,* 64 N. Y. 596.)

*A. G. Patterson* for respondent.   No consideration is expressed in or provided for by the contract.   (*Matter of Layman,* 55 Fed. Rep. 29.)   The defendant was indebted to the plaintiff for the amount claimed in the complaint.   In the absence of a contract, where the village uses the water it is bound to pay a reasonable price therefor.   (*Nelson* v. *Mayor, etc.,* 63 N. Y. 544; *Kramrath* v. *City of Albany,* 127 N. Y. 581; *Port Jervis Water Co.* v. *Village of Port Jervis,* 151 N. Y. 111; *Staten Island Water Supply Co.* v. *City of New York,* 144 App. Div. 318; *Meara* v. *Citizens W. W. Co.,* 110 Misc. Rep. 738; 191 App. Div. 913; *City of Mount Vernon* v. *N. Y. Interboro Water Co.,* 115 App. Div. 662; *City of Knoxville* v. *Knoxville Water Co.,* 212 U. S. 1; *McCook Water Works Co.* v. *City of McCook,* 85 Neb. 677; *Silberberg* v. *Citizens Water Supply Co.,* 116 Misc. Rep. 595; *Waterloo Water Co.* v. *Waterloo,* 200 App. Div. 718; 193 N. Y. 360.)

CARDOZO, J.   Plaintiff, a waterworks corporation, sues the village of Walton for the reasonable value of water furnished for fire protection at the fire hydrants in the village during the months of September and October, 1922.   The defendant answers that the water was used under an agreement with the plaintiff that it would be furnished without charge.   The binding force of that agreement is the chief question to be determined.

The controversy brings us back to the year 1879.   An agreement in writing between the plaintiff, the company, and the defendant, the village, dated August 21, 1879, purports to regulate the installation of hydrants in the streets and the use for fire purposes of water supplied therefrom.   The company is to procure for the village eighteen hydrants of a prescribed type and to connect seventeen of them with the main pipes at the points

theretofore designated by the company's engineers. The village is to have the title to the hydrants, and is to pay the actual cost, including that of connecting and setting, not exceeding a prescribed maximum. Appropriate provisions are made for the location of additional hydrants, if any are required. "The company, its successors or assignees, shall furnish water and the village shall have free use thereof from such hydrants at all times for fire purposes without charge so long as such Water Works exist." On the other hand, the company shall have "control thereof [*i. e.,* of the hydrants] except for fire purposes, and the village shall not detach the hydrants from the main pipes" without the company's consent. Eighty hydrants have been set in place by the plaintiff under the terms of this agreement. Six more were installed under a like agreement by another company, whose property has been acquired by the plaintiff under the foreclosure of a mortgage. For upwards of forty years the village used the water for fire protection, and the company supplied it without charge. In the year 1922 some dispute arose with reference to a tax imposed upon a special franchise. Thereupon in October, 1922, the company presented a verified bill for water furnished for fire protection during September, 1922, and in November another bill for water furnished in October. These bills the village has been condemned to pay, upon the ground that there was no consideration for the promise made by the company to furnish water without charge.

We think consideration is not lacking whether the test be benefit to the promisor or detriment to the promisee. The plaintiff was evidently impressed with a belief that some advantage would come to it from the privilege of keeping its hydrants in the streets. This is plain from the provision that it was to have control of them except for fire purposes, and that unless it gave its consent they were not to be disconnected or removed.

The value of such a privilege is attested by the course of dealing. The company made use of the hydrants for the flushing of its mains. It made use of them also to supply water at a price to the village and to owners for the sprinkling of the streets. We are told that this privilege was worthless or illusory because the use might thereafter be prohibited or limited at the option of the village. We think the conclusion does not follow from the premise, if the premise be assumed. There is no need to inquire to what extent, if at all, the village had stripped itself of the right of interference with the hydrants by the covenant that they should be subject, except for fire purposes, to the company's control. We may assume that the control was subject to be whittled down or even, it may be, destroyed through the exercise of a police power impliedly reserved. This does not mean that the privilege of installing the hydrants in the streets and keeping them there was illusory or worthless. Their presence in the streets gave the company the advantage of economic opportunity. They supplied a reasonable expectancy that in the race of competition, it would fare as well as some one else, and indeed a little better. They put it on the ground, in the forefront of the field, with the plant and the equipment that gave it the first chance. Indeed it could have no rivals without a duplication of hydrants likely to be disfiguring and wasteful, and thus a duplication which the village would be reluctant to allow. If such opportunity is not a thing of value, we may wonder why value is ever found in the sale of a good will, " the probability that the old customers will resort to the old place " (*Cruttwell* v. *Lye*, 17 Ves. Jr. 335, 346; *Von Bremen* v. *MacMonnies*, 200 N. Y. 41, 47). Fulfillment may fall short of expectation. At least there has been gained a foothold from which occasion can be seized.

We think the argument against this contract is aimed at the adequacy of the consideration rather than its

existence. With adequacy, we are not concerned (1 Williston, Contracts, §§ 115, 137; Anson, Contracts [Corbin's edition], § 123). In the old case, Bainbridge, who owned boilers, allowed Firmstone to weigh them upon the promise that they would be returned in good condition (*Bainbridge* v. *Firmstone*, 8 A. & E. 743). The court would not listen to the argument that the promise was a naked pact. " I suppose the defendant thought he had some benefit; at any rate there is a detriment to plaintiff from his parting with the possession for even so short a time " (per PATTESON, J., in *Bainbridge* v. *Firmstone, supra*). So here we must suppose that the company thought it had some benefit in bargaining for the control of the hydrants and the privilege of keeping them in the streets after the village wished to disconnect them; at any rate there was a detriment to the village from the promise that they would be suffered to remain (cf. *Gurfein* v. *Werbelovsky*, 97 Conn. 703). We do not forget that " nothing is consideration that is not regarded as such by both parties " (*Fire Ins. Assn.* v. *Wickham*, 141 U. S. 564, 579). " The fortuitous presence in a transaction of some possibility of detriment, latent but unthought of, is not enough " (*McGovern* v. *City of New York*, 234 N. Y. 377, 389). " Promisor and promisee must have dealt with it as the inducement to the promise " (*McGovern* v. *City of New York, supra*). These principles may be conceded, but they do not fit the case before us. The company's control, persisting even after notice of the defendant's desire to disconnect, was not left to implication. It was exacted by the one side and conceded by the other. Benefit and detriment were not latent and unthought of. They lay upon the surface, and were balanced, for all that we can see, the one against the other. Courts are slow to say that promises bearing upon their face the outward or formal tokens of a contract with mutual obligations, shall be set at naught on the assumption that the parties were oblivious

of the advantages and burdens of their reciprocal engagements (1 Williston, Contracts, § 112, p. 233).

We hold, then, that there was consideration sufficient to sustain the promise of service without charge. If our conclusion in that respect were different, the plaintiff would not be permitted to recover for water furnished in advance of notice to the defendant that the promise was withdrawn. In such circumstances, there can be no recovery upon an express promise, for express promise there is none. There can be no recovery upon an implied promise, 'for the implication is rebutted by the terms of offer and acceptance (*Miller* v. *Schloss*, 218 N. Y. 400, 406; *Klebe* v. *U. S.*, 263 U. S. 188).

We have considered other objections to the contract, and find them unsubstantial.

The judgment of the Appellate Division and that of the Trial Term should be reversed, and the complaint dismissed, with costs in all courts.

HISCOCK, Ch. J., POUND, McLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur.

Judgments reversed, etc.