MARIA BLANCO et al., Respondents, *v.* TERESA VELEZ, Appellant.

First Department, April 6, 1945.

*Irving Felcher* for appellant.

*Morris M. Goldknopf* of counsel (*Felipe N. Torres,* attorney), for respondents.

TOWNLEY, J.   This action was brought to impress a trust upon the proceeds of certain war risk insurance upon the life of one Jose Bayonet, a merchant seaman.   The defendant, a sister of the insured, was named as beneficiary of the insurance and has collected the amount thereof.   The plaintiffs are also sisters of the deceased and make claim to a share of the insurance money because of an alleged oral declaration of trust in their favor claimed to have been made by the deceased and accepted by the defendant.

It is claimed that the defendant was designated as beneficiary by the deceased and directed to collect and hold the proceeds thereof in trust for herself and her sisters.   The designation of the defendant is alleged to have been made at the time Bayonet signed the ship's articles.   At that time he could have named all five of his sisters as beneficiaries had he wished to.   The document signed by him with other members of the crew contained many instances where a number of beneficiaries were named by a single seaman.

The trial court has found that the declaration of the trust was made and accepted by the defendant and directed judgment accordingly.   The testimony upon which this finding is based

is not free from suspicion and some of it is clearly inadmissible. It will be reviewed later in this opinion. But whatever view of it is taken, it established at most a contract to establish a trust, unsupported by any writing.

Such agreement is void under the provisions of section 31 of the Personal Property Law because there was no note or memorandum thereof in writing signed by the party to be charged therewith. The agreement relied on herein plainly violates subdivision 1 because by its terms it " is not to be completed before the end of a lifetime." The right to the insurance would accrue only upon the death of the insured. Distribution of the fund could not be made during his lifetime.

This court recently had occasion in *Bayreuther* v. *Reinisch* (264 App. Div. 138, affd. 290 N. Y. 553) to consider a somewhat similar situation. There, the deceased had agreed to name the plaintiff as irrevocable beneficiary of an interest which the decedent had in the New York City Employees' Retirement Fund. The agreement was not in writing and the decedent named persons other than the plaintiff. In discussing section 31 of the Personal Property Law, this court, by Mr. Justice Dore, said: " Performance of the oral promise herein alleged obviously could not be completed before the end of a lifetime. * * *

" The amendments of section 31 made in 1933 evince the settled public policy of the State to outlaw this type of oral claim, and the pension funds of city employees should sedulously be protected accordingly. The statute ' should not be defeated by judicial construction or frittered away by exceptions.' (*Matter of Whitney,* 153 N. Y. 259, 264.) "

What was there said applies with equal force to claims based upon oral agreements relating to the proceeds of insurance upon the lives of seamen in war time.

The agreement relied on also violates subdivision 8 of this section which renders void " a contract to establish a trust." Prior to the passing of the amendment to section 31 of the Personal Property Law, it was undoubtedly very generally the law throughout the United States that oral declarations of trust by an insured or by a beneficiary of an insurance policy were enforcible. (1 Scott on Trusts, § 84.1.) Section 31 does not in terms forbid an oral declaration of trust. It does, however, forbid an oral contract to establish a trust.

To give any force to the legislative intention as expressed in subdivision 8, it is necessary to analyze the supposed declaration of trust made in this case and determine whether

it is in fact a declaration of trust by a beneficiary or an agreement with the insured to make such a declaration.

The testimony by the witness Ronchi was as follows: "So Mr. Bayonet said he was leaving one of his sisters as beneficiary because they could not put more names than one on the list when they sign for shipping, and he was leaving Teresa instead of Mrs. Blanco, as he did before, because Teresa spoke English and Mrs. Blanco did not; but that his case was different from mine because they were all sisters, they were good sisters and, of course, Teresa would divide it in equal parts whatever he would leave to her as beneficiary." This testimony was objected to as incompetent because Teresa Velez was not present at the time the declarations testified to were made. The objection was valid and the testimony should have been stricken out. However, taking it as it stands, it seems to mean that there had been some kind of an agreement between Jose Bayonet and Teresa Velez.

The testimony of Hipolita Miranda is as follows: " He [Jose Bayonet] said ' So long as they don't allow so many names on these things I am leaving my sister Teresa, because she knows more about English than my aunt, Maria Blanco. I used to have my sister Maria before, but as long as she doesn't know how to speak English, I changed it; so I left it to Teresa because I know how she is going to take care of it, I know she is going to divide it between all of them, and they are all going to get equal parts.' Q. Did Teresa say anything, or did he say anything to Teresa at that time? A. He looked at her and said ' I know you are going to do as I want you to do '. So she said ' Why, sure; why not? ' " Taking this testimony for its full value as binding on Teresa Velez, it indicates that there had been an agreement between her and Jose Bayonet as to what she was going to do with the insurance money if it became collectible.

After the death of Jose Bayonet, the testimony of Maria Costas is that Teresa Velez said: " No, I haven't collected the money, but don't you worry, as soon as I collect the money I will give each a share, each of the sisters." This last testimony is certainly not an admission of any trusteeship.

The testimony was similarly unsatisfactory concerning the dates at which these supposed admissions were made. The witness Miranda testified positively that the statements were made sometime between April 20th and April 27th. The witness Ronchi stated that his conversation with Jose Bayonet occurred a few days after April 20th, not as much as a week after. The dates are important because the war risk policy which was

signed by all the crew is dated April 29, 1942, although the ship's articles which provided for, such a policy are dated April 27th. Thus, it conclusively appears that the declarations and admission, if made, must have occurred prior to the execution of any contract of insurance which named the defendant as beneficiary.

It seems to us that the most that can be said of this testimony, admissible and inadmissible, is that there was an oral agreement to establish a trust. This is void under the statute.

On the basis of such loose language the court should not find a declaration of trust *in praesenti*. At best the words used indicate some sort of agreement about something to be done on the brother's death.

It is obviously necessary to be particular with the quality of evidence in this type of case because in effect it rewrites an instrument for a deceased and may very well thereby violate his intention. The extent to which the courts have gone at common law in their desire for certainty before enforcing any such supposed declarations of trust as herein presented is clearly illustrated by the case of *Cessna* v. *Adams* (93 N. J. Eq. 276). That case concerned a war risk insurance policy in which the insured had named his mother as beneficiary. He thereafter wrote to his fiancee, the claimant, saying that he carried $10,000 in his mother's name but was unable to make a will. He added: " Wrote to Mother that if anything happens half this amount goes to you. She will be perfectly willing that you have half which you have all the right in the world to claim * * * ." The mother denied that she had ever received any such letter. The court said: " The letter referred to by the insured may have been written to his mother or it may not have been, since she denies having received such a letter; nor was the certificate or policy of insurance delivered to complainant. * * * Obviously, the execution of a trust of this nature should be clearly and satisfactorily established to enable this court to recognize and enforce it."

The object of a statute of frauds is to prevent disputes of this kind in which, however the court acts, there is always some uncertainty as to whether the wishes of a deceased are being carried out.

We therefore hold that this agreement is not enforcible because it is void under the two subdivisions of section 31 of the Personal Property Law above discussed.

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

UNTERMYER, J. (dissenting). The Statute of Frauds does not apply to the present case for the reason that the plaintiffs established, as the Special Term has found, the existence of a trust of the war risk insurance on the life of Jose Bayonet. In no sense are they seeking the enforcement of any contract to be performed in the future to which alone the Statute of Frauds applies. They are not asserting "a contract to establish a trust" (Personal Property Law, § 31, subd. 8), for the complaint alleges and the proof shows that Jose Bayonet established the trust which the plaintiffs are seeking to enforce, not against Jose Bayonet or his estate, but against the trustee. It was established when Jose Bayonet placed the insurance in the name of the defendant pursuant to the arrangement previously made that it was held by her for the benefit of all the members of the family. The plaintiffs are not seeking the enforcement of any contract "not to be completed before the end of a lifetime" (Personal Property Law, § 31, subd. 1) for the relation between trustee and beneficiary need not be contractual and results from the *act* of the settlor in creating the trust and vesting the legal title in the trustee. That the relationship is not contractual is demonstrated by the fact that the beneficiary might enforce the trust against the trustee notwithstanding that he was ignorant of its creation (*Matter of Brown,* 252 N. Y. 366), or that he furnished no consideration, as none was furnished in the present case.

The plaintiffs, therefore, in this action are asserting property rights against the defendant as trustee of a trust created by Jose Bayonet which attached to the insurance and its proceeds when paid to the defendant. (*Hirsh et al.* v. *Auer,* 146 N. Y. 13.) In this respect the present case differs from *Bayreuther* v. *Reinisch* (264 App. Div. 138, affd. 290 N. Y. 553) where the plaintiff was seeking the enforcement of a contract alleged to have been made by the deceased *to create* for the plaintiff's benefit a trust which would not become effective before the end of a lifetime.

The judgment should be affirmed.

MARTIN, P. J., GLENNON and DORE, JJ., concur with TOWNLEY, J.; UNTERMYER, J., dissents in opinion and votes to affirm.

Judgment reversed, with costs, and the complaint dismissed, with costs. Settle order on notice, reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.