Arthur B. **MULLALY**, Plaintiff,

v.

**CARLISLE CHEMICAL WORKS, INC.**, a corporation of Ohio, Defendant.

Civ. A. No. 58–59.

United States District Court
D. New Jersey.

June 2, 1960.

Sidney H. Smith, East Orange, N. J., Roger Hinds, East Orange, N. J., of counsel, for plaintiff.

O'Mara, Schumann, Davis & Lynch, Jersey City, N. J., Edward J. O'Mara, Jersey City, N. J., and Cravath, Swaine & Moore, New York City, of counsel, for defendant.

WORTENDYKE, District Judge.

Defendant's present motion for summary judgment "dismissing the amended complaint" follows the denial of plaintiff's motion for summary judgment upon defendant's counterclaim. See D.C.1959, 177 F.Supp. 588. The case was removed to this Court from the Superior Court of New Jersey upon diversity jurisdictional grounds.

Plaintiff was chief executive officer and a controlling stockholder of Advance Solvents & Chemical Corporation (Advance), a New Jersey corporation, which was acquired by defendant Carlisle Chemical Works, Inc., (Carlisle), an Ohio corporation a wholly owned subsidiary of the Cincinnati Milling Machine Company (Cincinnati Milling), also an Ohio corporation. Carlisle acquired the stock of Advance on April 18, 1955,[1] under the terms of a written purchase agreement dated March 21, 1955, for $1,400,000. Collateral with this acquisition plaintiff contracted in writing with defendant to serve as chief executive officer of Advance (which became a division of Carlisle through defendant's purchase of its stock) for three years succeeding the sale, at a monthly salary of $2,750, effective throughout that period, notwithstanding Carlisle's reserved right to remove him from that position within that employment period. Both before Carlisle's acquisition of Advance and thereafter until his removal from the position of chief executive officer of Carlisle's Advance division on February 9, 1957, plaintiff performed the duties of his employment in New York City.

On November 30, 1953 Advance had entered into Group Annuity Contract No. GA–783 with State Mutual Life Assurance Company (State Mutual) which provided a non-contributory retirement plan for Advance employees, including plaintiff. This annuity contract permitted discontinuance by Advance of its premium payments thereunder, as of November 30 of any year. This option was exercised by Carlisle as of November 30, 1955 and on February 8, 1956 the board of directors of Cincinnati Milling, by resolution, included both Carlisle Division (of Cincinnati Milling) and Advance Division (of Carlisle) in the Cincinnati

---

1. The amended complaint alleges that "Advance was duly dissolved in accordance with the laws of the State of New York," and that "(i) in consideration * * * of the transfer of said business and assets * * * (Carlisle) assumed all the outstanding liabilities and obligations of Advance and the latter's employee relationships, * * *."

Milling Machine Company Retirement Trust Plan, as of January 1, 1956. This trust plan rests upon irrevocable annual payments by Cincinnati Milling to an independent trustee, the Central Trust Company, to provide employee retirement benefits commencing at age 65 after 15 years of service, with the further proviso that an employee could retire at an earlier age "after 25 years of service or, with the approval of the company in the event of disability or other hardship, after 15 years of service."

Plaintiff here sues upon an alleged oral promise, made to him in New York City on November 17, 1955, by Karl L. Schanbacher, president of Carlisle, that the Cincinnati Milling Trust Plan would apply to plaintiff, and that, if he were discharged or involuntarily retired before he had completed 25 years of service, he would be certified for "hardship" retirement under the proposed plan.[2] On April 18, 1958, when plaintiff's $2,750 monthly salary payments under his written employment contract of March 21, 1955 ceased, his aggregate service to Advance and Carlisle amounted to 24 years and 10 months, but his application for benefits under the "hardship" proviso of the Cincinnati Milling Trust Plan was rejected.

In this action plaintiff seeks to establish his right to those benefits.[3]

By its present motion, Carlisle impugns the validity of the oral agreement in suit upon the grounds that it (1) lacked consideration, and (2) is within the Statute of Frauds of the State of New York.

■ Assuming that Schanbacher did make the oral promise which plaintiff alleges, but which defendant emphatically denies, we must face the preliminary question of what law applies to the determination of its enforceability. This Court's jurisdiction rests upon the diversity of citizenship of the parties. New Jersey's law of conflicts applies. Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Specialties Development Corp. v. C-O-Two Fire Equipment Co., 3 Cir., 1953, 207 F.2d 753. The validity of a contract is determined by the law of the place of contracting. Colozzi v. Bevko, Inc., 1955, 17 N.J. 194, 110 A.2d 545; Naylor v. Conroy, App.Div.1957, 46 N.J.Super. 387, 134 A.2d 785, 67 A.L.R.2d 689. See also Restat. Conflict of Laws, § 332. The promise here sued upon was made in New York. The valid-

2. Plaintiff alleges (amended complaint, par. 5) that defendant agreed, in consideration of plaintiff's acceptance of status under the said proposed retirement plan of defendant, plus a lump sum representing the actuarial value of his said then vested right under the retirement plan of Advance, and as part of the consideration for the said transfer of the assets and business of Advance, and as a feature of defendant's taking over and assumption of the obligations and employee relationships of Advance, "that plaintiff's status, rights and benefits under said retirement plan (the Cincinnati Milling Trust Plan) should become, be and remain the same as those of an employee of defendant or its predecessors or parent companies continuously from and after June 23, 1933 (the date of Mullaly's commencement of service with Advance), at the several salary rates received by him from Advance, and later from the defendant, and in view of his 23 years of service that in the event of his thereafter being discharged or in-

voluntarily retired by defendant his said termination of employment would be treated, considered and approved by defendant as a hardship retirement after fifteen years of service within the intendment of said retirement plan."

3. Plaintiff was in his forty-eighth year at the time of his discharge. He alleges that his salary at the time of discharge was at the rate of "more than $35,000 per annum" (although my calculation of the monthly rate of $2,750 yields an annual salary of but $33,000), and claims that defendant's "anticipatory breach" of its promise in suit has deprived him of future benefits in the amount of $160,000, which he claims as damages. At the pretrial conference plaintiff contended that he is entitled to damages in the sum of $28,300, alleged to be the present worth of pension payments during the period of his life expectancy, with interest from February 9, 1957, the date upon which his employment was terminated.

ity of the asserted agreement is to be tested by the law of that State.

■■ We first face defendant's contention that the New York statute of frauds applies to the promise. Failure of compliance with the requirements of the statute is fatal to the validity of a contract. Silverman v. Indevco, Inc., Sup. 1951, 106 N.Y.S.2d 669, affirmed 279 App.Div. 573, 107 N.Y.S.2d 542. The statute relied upon by Carlisle for this contention is Section 31 of the New York Personal Property Law (40 McKinney, Consol. Laws of N.Y. § 31). That section provides in part:

"Every agreement, promise or undertaking is void, unless some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, * * * if such agreement, promise or undertaking;

"1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime;

* * * * *

"8. Is a contract to establish a trust * * *."

Plaintiff asserts that the promise which he seeks to enforce was made on November 17, 1955. There was no note or memorandum thereof in writing signed by or in behalf of the defendant. Was the alleged promise to be performed within one year from the date of the making thereof? Both parties are in accord in stating that § 31 of the statute does not render unenforceable promises which are capable of being, although not required to be, performed within one year from the making thereof. Nat Nal Service Stations v. Wolf, 1952, 304 N.Y. 332, 107 N.E.2d 473. Sed cf. Droste v. Harry Atlas Sons, Inc., 2 Cir., 1944, 145 F.2d 899, rehearing denied 2 Cir., 147 F.2d 675, certiorari denied 325 U.S. 891, 65 S.Ct. 1408, 89 L.Ed. 2003. See cases cited in Farmer v. Arabian American Oil Company, D.C.S.D.N.Y.1959, 176 F.Supp. 45. Mullaly's employment by Carlisle became effective on April 18, 1955. There-

fore, at the time of the alleged oral agreement, Mullaly had been performing services for Carlisle under that employment contract for a period of seven months. By the terms of that contract Carlisle reserved the right to terminate Mullaly's employment at any time, subject to its obligation to continue payment of the agreed salary for the full term of three years prescribed therein. That contract recited that it constituted the entire agreement between the parties. When certification of Mullaly for "hardship" retirement benefits under the subsequent oral promise would have to be made, if at all, is not disclosed. His discharge from employment under the written agreement could occur at any time within one year from the making of the oral promise. The promise, therefore, could be performed in less than a year. Carlisle concedes that on the date of the alleged promise (November 17, 1955) Mullaly had served Advance since June 23, 1933, and Carlisle from April 18, 1955 to November 17, 1955; an aggregate period of over 22 years. He was, therefore, eligible for the allegedly promised approval for "hardship retirement" on the basis of total time served on the date the promise was made. The alleged promise was not, therefore, within subdivision 1 of the New York statute.

■ I disagree with defendant's contention that the promise in suit was to establish a trust. On the contrary, it was merely an undertaking to approve Mullaly's eligibility for "hardship" retirement after fifteen years of service, as a beneficiary of a trust to be created *inter alios*. Cf. Blanco v. Velez, 1945, 269 App.Div. 133, 54 N.Y.S.2d 217, reversed on other grounds 1946, 295 N.Y. 224, 66 N.E.2d 171. The promise in suit is not rendered unenforceable either by subdivision 1 or subdivision 8 of the New York statute of frauds.

■ We turn now to the defendant's primary attack upon the oral agreement in suit, based upon the alleged lack of consideration therefor. What, if any, was the consideration for the alleged promise, if it was made? Consideration

which will support a contract is an advantage to the promisor or a forbearance or relinquishment by the promisee; in other words, a "benefit to the promisor or detriment to the promisee." Walton Water Co. v. Village of Walton, 1924, 238 N.Y. 46, 49, 143 N.E. 786, 787. It imports the idea of a "trade of one valuable thing for another," Hammond Oil Co. v. Standard Oil Co. of New Jersey, 1932, 259 N.Y. 312, 323, 181 N.E. 583, 587, or the giving of "something of real value," Mencher v. Weiss, 1953, 306 N.Y. 1, 8, 114 N.E.2d 177, 181. See also Restat. Contracts § 75, com. b. We search, therefore, for some advantage, benefit or valuable thing accruing or passing, or to accrue or pass to Carlisle from plaintiff, which may serve as consideration for the alleged promise to approve retirement eligibility for Mullaly at an age below 65 and after less than 25 years of service. Carlisle had already bought Mullaly's stock in Advance, and that of his family, for $1,400,000. It had employed him as executive officer of its newly acquired Advance Division for a term to expire April 18, 1958, at $2,750 per month. By that contractual limitation upon his employment plaintiff became incapable of achieving an aggregate of 25 years of employment by Advance and Carlisle. In

none of the pleadings or affidavits do I find any specific, concrete claim or evidence that Mullaly relinquished something or promised to do something which would serve as consideration for Carlisle's alleged promise to exempt him from the requirement of 25 years of service and attainment of age 65 years in order to become eligible for the proposed retirement benefits.[4] Plaintiff's alleged acceptance of status under the proposed Cincinnati Milling retirement plan does not appear to be a consideration for the promise in suit, because, under the provisions of his written employment contract, which was for a specific period of three years, he would not become eligible for pension status thereunder (unless that employment contract was renewed or extended by Carlisle or Cincinnati Milling after its specified termination date), and acceptance of a status of eligibility after service of less than 25 years accrued service would only be a benefit, not a detriment, to him, as promisee. Nor did plaintiff's subsequent acceptance of "a lump sum representing the actuarial value collectible from the insurance company (State Mutual) in lieu of his * * * vested right under the retirement plan of Advance" serve as a consideration for the promise upon which he

---

4. In his brief in opposition to the present motion, plaintiff states that "the consideration for the alleged oral promise of defendant * * * consisted of 'plaintiff's agreeing to accept status under the said proposed retirement plan of defendant plus a lump sum representing the actuarial value collectible from the insurance company in lieu of his said vested right under the retirement plan of Advance and agreeing to use his best efforts to promote and sell to the employees of Advance, as in their best interests, the proposals referred to in paragraph 4'" of the amended complaint.

At the pretrial conference in this case, heard in the interval between argument of the present motion and the writing of this opinion, plaintiff's contentions respecting consideration for the oral promise in suit were stated as follows: (1) plaintiff's agreement to accept status under the proposed Cincinnati Milling retirement plan plus a sum of money from State Mutual equivalent to the actuarial

value of his existing right under its policy; (2) plaintiff's agreement to use his best efforts to persuade Advance employees to accept inclusion in the Cincinnati Milling plan as in their best interests; (3) plaintiff's agreement to persuade Advance employees to continue in the employment of Carlisle, plaintiff's said undertaking to survive any termination of his employment by defendant; and (4) the representations made by Advance to its employees, in the form of a brochure explaining the Advance plan under its contract with State Mutual, to make an additional premium payment to the insurance company for the purchase of a past-service retirement annuity for each employee of Advance with credited past service who was enrolled under the plan on November 30, 1953. Plaintiff claims to have been a beneficiary of the foregoing undertaking (4), and asserts that Carlisle assumed all of the undertakings of Advance to the latter's employees.

sues because it did not move to the promisor, Carlisle, but rather to State Mutual. Such vested rights, if any, which plaintiff acquired under the Advance retirement plan were against State Mutual, which, by the terms of its policy contract, agreed to pay each employee of Advance who became a participant [5] thereunder "benefits to which he becomes entitled in accordance with and subject to the terms of (the) contract." His contract of employment of March 21, 1955 with Carlisle expressly superseded "any arrangements (theretofore) in effect between" Mullaly and Advance. On the date of the alleged oral promise of November 17, 1955, plaintiff had no vested rights against Advance to relinquish. Finally, Mullaly's statement to Schanbacher that he would "use his best efforts to get the Advance employees" to surrender their rights under the Advance plan is questionable consideration for the oral promise which Mullaly says Schanbacher made to treat, consider and approve him "as a hardship retirement after fifteen years of service within the intendment of * * * (The Cincinnati Milling) retirement plan." The rights of the other Advance employees under the Advance retirement plan were similar to those of Mullaly, i. e., against the insurer, State Mutual, as prescribed in its policy contract. They could elect acceptance of a paid-up annuity or a lump sum commutation from the insurer, and still avail themselves of the Cincinnati Milling plan benefits. Mullaly's persuasion of them, in their own interests, to accept the latter advantages, would not seem to be either a detriment to him, or an advantage to Carlisle. "The fortuitous presence in a transaction of some possibility of detriment, latent but unthought of, is not enough. * * * Promisor and promisee must have dealt with it as the inducement to the promise." Cardozo, J. in McGovern v. City of New York, 1923, 234 N.Y. 377, 138 N.E. 26, 31, 25 A.L.R. 1442. Plaintiff's employment contract of March 21, 1955 made no provision for his

special treatment under the prospectively contemplated Cincinnati Milling trust plan, and expressly stated that "this agreement constitutes and expresses the whole agreement of said parties hereto (Mullaly and Carlisle) in reference to any of the matters or things herein provided for and supersedes any arrangements heretofore in effect between (Mullaly) and Advance."

By letter dated December 30, 1955 Carlisle cancelled Advance's group retirement policy with State Mutual, effective November 30, 1955, the anniversary date thereof, stating that it had its own retirement plan. The insurance company (State Mutual) in acknowledging this notice of cancellation, announced, in its letter of January 13, 1956, that "In accordance with the terms of the contract, annuity coverage credited to participants under the contract as of November 30, 1955 becomes vested in them. This annuity coverage is paid-up and on a deferred basis, with monthly income payments commencing on the normal retirement dates of the participants." On April 16, 1957, the termination of Mullaly's interest under the insurance policy underlying the Advance plan was consummated by his acceptance of a check from State Mutual in the amount of $3,211.47, in payment of the reserve value, on April 1, 1957, of his paid-up benefits under Certificate No. 19 of the master policy. Thus, any vested right which Mullaly may have acquired in the Advance retirement plan terminated with his election to accept, and his acceptance of, this commutation of his benefits thereunder (and no part of that benefit appears to have passed to Carlisle to constitute consideration for the alleged oral promise.) Plaintiff's written contract with Carlisle to serve as chief executive officer of its Advance Division specifically limited the period of his employment to three years from Carlisle's acquisition of the stock of Advance. This acquisition was consummated in April of 1955. The latest possible date

5. The State Mutual policy defines "participant" as "any employee (of Advance) who becomes covered under this (policy) contract.

for the termination of this three-year employment period would necessarily be prior to Mullaly's attainment of twenty-five years of aggregate service as an empoyee of Advance and Carlisle. Although Carlisle acquired the assets of Advance "subject to all liabilities constituting a charge against said assets" there existed at the time of such acquisition no liability of Advance to Mullaly under the Advance retirement plan chargeable against Advance's assets or otherwise.

In his discovery deposition of June 24, 1959, Mullaly testified that the alleged agreement here in suit was oral, that it was a part of a continuing conversation which took place betwen him and Mr. Schanbacher (president of Carlisle) and that he, Mullaly, has no written memorandum of such an agreement, nor was there any witness to the conversation. Schanbacher testified, in his deposition of the same date, that no such conversation ever occurred and no such promise was ever made. While the question of whether the promise was made, and that of Schanbacher's authority to bind Carlisle in making such a promise are issues of fact, if there was no consideration for the promise as a matter of law, the plaintiff would not be entitled to recover in this action.

 Only in the event that there is no genuine issue of fact to be resolved may a summary judgment issue on a motion such as that presently under consideration. Any doubt as to the existence of a genuine issue of fact is to be resolved against the moving party, who has the burden of demonstrating that no such genuine issue exists. Fairbanks, Morse & Co. v. Consolidated Fisheries Co., 3 Cir., 1951, 190 F.2d 817, 824; Lawlor v. National Screen Service Corp., 3 Cir., 1956, 238 F.2d 59, 65, vacated 352 U.S. 992, 77 S.Ct. 526, 1 L.Ed2d 540; Krieger v. Ownership Corp., 3 Cir., 1959, 270 F.2d 265. Although the Court of Appeals in the Krieger case denied a petition for rehearing, two of the members of the Court, concurring in the result, dissented from some of the language employed in the opinion for the majority by taking is-

sue with the statement that "facts conceded and embodied in a pretrial order cannot be the basis of a summary judgment." On the pretrial conference in the case presently before me the plaintiff was afforded an opportunity to reiterate, modify, qualify and amplify the contentions respecting the consideration for the oral promise here in suit (see footnote 4 supra), which he had previously asserted in his complaint, his amended complaint, his deposition and his brief on the present motion. The opinion of the Circuit Court in Krieger quotes with approval from that in the Tenth Circuit in Zampos v. United States Smelting, Refining & Mining Co., 1953, 206 F.2d 171, 173 which describes the purpose of Rule 56 to be "to provide against the vexation and delay which necessarily comes from the formal trial of cases in which there is no substantial issue of fact. It is to permit the expeditious disposition of cases of that kind. * * * And it (the Rule) should be invoked with caution to the end that litigants may be afforded a trial where there exists between them a bona fide dispute of material facts." Citing Associated Press v. United States, 1945, 326 U.S. 1, 6, 65 S.Ct. 1416, 89 L.Ed. 2013. The contentions of the plaintiff in the case before me respecting the existence of legal consideration for the promise in suit, whether they be expressed in the complaint, the amended complaint, the plaintiff's deposition, plaintiff's brief on the motion or plaintiff's contentions at the pretrial conference, pose for the Court the purely legal question, viz., whether, assuming the truth of the facts (as distinguished from the conclusory allegations set forth in such contentions), such legal consideration can be spelled out. In effect the present motion is suggestive of a demurrer to the allegations of the plaintiff respecting the sufficiency of consideration for the promise. I am strongly inclined to the opinion that assuming the facts, as distinguished from the conclusions embodied in the allegations in which the plaintiff couches his contention that the promise was supported by a legal

consideration, no such consideration is to be found. Despite the foregoing views, I am constrained, in deference to the admonitions of the Third Circuit Court of Appeals in Krieger, supra, and, more recently in Bragen v. Hudson County News Company, Inc., 278 F.2d 615, to deny the present motion. In the language of the opinion in Bragen, "[t]he impact of particular circumstances upon an inference arising from an admittedly existing factual situation calls for a factual determination which is the function of the trier of the facts and not that of the court in disposing of a motion for summary judgment." Whether the evidence upon the trial will disclose a sufficient consideration for the promise in suit remains to be seen. The motion is denied. Let an appropriate order be presented.